

F I L E D
JUN 11 2018
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

# UNITED STATES DISTRICT COURT
# IN THE EASTERN DISTRICT OF VIRGINIA

KANDISE LUCAS, Lead Advocate    )

DR. MARLA CRAWFORD, Advocate/Analyst  )

TONI HUNTER-DAVIS, Parent    )

Plaintiffs,    )

    )    Civil Action No: 3:18cv402

    )

v.    )

    )

HENRICO COUNTY PUBLIC SCHOOL BOARD )

PATRICK KINLAW, Superintendent    )

KIRK EGGLESTON, Principal CTE    )

HENRICO COUNTY POLICE DEPARTMENT  )

HUMBERTO CARDOUNEL, Police Chief    )

SERGEANT CROOK, Police Officer    )

HENRICO COUNTY COMMONWEALTH    )

SHANNON TAYLOR, District Attorney    )

TANIA KREGAR, Assistant District Attorney  )

And    )

L. NEIL STEVERSON, District Court Judge  )    Civil Action No. _____

Defendants.    )    42 U.S.C. §1983 (declaratory relief)

## COMPLAINT

COMES NOW, The Plaintiffs, Lead Advocate, Kandise Lucas, Dr. Marla Crawford, and Toni Hunter-Davis, all citizens of the United States, represented pro se, to bring this Civil Rights complaint for declaratory relief, injunctive relief, damages, and other appropriate relief that the court deem just and proper. The parties bring this complaint for violations of their individual and associated rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. 1983, 1985 and 1986; 29 U.S.C. 504 (Rehabilitation Act of 1973), 42 U.S.C. 12132, 12182, 12203 (Americans with Disabilities Act of 1990, ADA); Article I, sections 1, 2, 3, 8, 10, 12 of the Virginia Constitution; Va. Code § 2.2-3900 Virginia Human Rights Act, and Va. Code § 18.2-500(A) under § 18.2-499 for Civil Conspiracy.

1. This Court has Original Jurisdiction under 28 U.S. Code § 1331. Jurisdiction for all State claims contained herein–being so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution are proper under 28 U.S. Code § 1367.

2. Venue is proper in that the events, locations, and conduct complained of herein all occurred in Henrico, Virginia which is under the jurisdiction of United States District Court Eastern District of Virginia.

# INTRODUCTION

3. Black disabled students are disproportionately suspended in Virginia.[1] Henrico County Public Schools (HCPS) had the largest gap among region schools, with 35 percent of the student population without disabilities being black. But 65 percent of the students referred to law enforcement were black.[2] The biggest disparity involved black male students with disabilities, who were nearly 20 times more likely to face suspension than white female students without disabilities. More than 17,000 short-term suspensions went to students between pre-kindergarten and third grade.[3] In 2016, Virginia public schools issued 126,000 out-of-school suspensions to approximately 70,000 individual students, according to Thursday's report, compiled by the JustChildren (JC) program of the Legal Aid Justice Center in Richmond. Those suspensions and expulsions were given to black boys and children with disabilities at a disproportionately high rate, the authors report.[4]

4. In Henrico County Public Schools in 2014, while black students received nearly 78 percent of suspensions, they accounted for just 36.8 percent of students in the school division, according to state data.[5] In 2015, African-American students with disabilities in Henrico were about 6.7 times more likely to be suspended long-term than their peers during that time.[6]

5. On June 3, 2018, Governor Ralph Northam signed the student discipline reform bill which addresses the critical issue of the disproportionate disciplining of African-American

---

[1] Richmond Times Dispatch, Justin Mattingly, October 17, 2017
[2] Richmond Times Dispatch, Justin Mattingly, June 3, 2018
[3] The Virginian Pilot, Matt McKinney, October 18, 2017
[4] The Christian Science Monitor, Lisa Suhay, May 19, 2016
[5] Richmond Times Dispatch, Ted Strong, November 27, 2014
[6] The Richmond Times Dispatch, K. Burnell Evans, April 17, 2014

students in Virginia, specifically the disproportionate removal of children in kindergarten through third grade. *Id.*

6. The State of Virginia, and Henrico County Public Schools specifically, have a history of documented disparate treatment and discrimination with reference to the removal of African American children, specifically African American male students with disabilities.

7. While this case is not about a suspension, per se, the facts presented are relevant. This claim originates out of the controversy of the subjective, unilateral, and permanent withdrawal of an African American male child, who was referred for "evaluations of a suspected disability under IDEA," [which provides him protection under IDEA and 504 Rehabilitation Act], being "forced out" of the predominantly Asian and White elementary school in Henrico County, while his mother was in a homeless and transitional crisis.

8. The controversy between the parties also originates out of HCPS and Colonial Trails Elementary School's (CTE) intentional denial of the family's "doubled up"[7] status under the McKinney Vento Act, in order to make a determination about residency that did not take into account the mothers temporary transitional state and her expressed intent to remain a resident of Henrico County. This denial created the unlawful justification to force the child out of Colonial Trails Elementary School that was the premise of the originating dispute between the Plaintiffs and Defendant CTE and Kirk Eggleston.

---

[7] "doubled up" is a federal term provided in the McKinney-Vento Act that describes a parent temporarily residing with other family members during a homeless status. The school argued that because Toni Hunter Davis was "doubled up" with her sister in Charles City that automatically changed her residency. While the parent informed CTE staff that it was temporary and she was in the process of seeking another home in Henrico, the attempted to criminalize her transition in order to coerce her to remove her son.

9.  The McKinney-Vento Homeless Assistance Act of 1987 (herein referred to as McKinney-Vento) [and under the Every Student Succeeds Act (2015)], is a federal law that requires that a homeless child must be immediately enrolled, provided full access to classes, be afforded school of origin or comparable service transportation as needed and cannot be discriminated against, or placed in a segregated school, based on their homeless designation. The law provides the federal right to remain in the school of origin, based on a child-centered, best interest determination and the right to receive transportation to and from the school of origin.  In providing this right, the federal law considered "for children who have been traumatized by the loss of home, friends, and perhaps death or injury of family members, returning to school is not only important for educational purposes, attendance at a school becomes an oasis of normalcy for them."[8]  In spite of the federal law, HCPS and Principal Eggleston not only sought to, and eventually did, withdraw the African American male child from the school despite the advisement and fierce advocacy of the advocates on behalf of the parent and M.A, but M.A's teacher admits to closing the door in little M.A.'s face, stating that he was not welcome back to his class at CTE. This fact instigates the controversy.

9. Retaliation occurs in an environment where school officials view IDEA as an unwanted imposition or as a way to develop a power base. In this setting the job is not to fully implement IDEA. Instead, school officials translate their responsibilities and duties to children and families into unquestioned decision making power over them. The profile of such officials can take two forms: openly hostile or smoothly deceptive, the latter preferring passive aggressive resistance. Hostile officials on the other hand use their position as an instrument of power to openly intimidate and even punish parents. Many parents never encounter retaliation. Those that do however, are

---

[8] https://nche.ed.gov/legis/essa.php

usually strong advocates for their children. Regardless, retaliation does occur and the fear of retaliation inhibits many parents. This affords school officials wide latitude to implement IDEA and the ADA as they see fit.[9]

## STATEMENT OF FACTS

10. Patrick Kinlaw is a Caucasian male.

11. Kinlaw has been the Superintendent of Henrico County Public Schools since January 10, 2014, and was thus responsible for the oversight of the Henrico County Public School Districts from January 10, 2014 to present.

12. Kirk Eggleston is a Caucasian male.

13. Eggleston is the current Principal of Colonial Trails Elementary School. He served in that role during the 2017-2018 school year. He was the Principal on January 30[the] and January 31st of 2018.

14. Humberto Cardounel is a Latino male.

15. Cardounel serves as the Chief of the Henrico County Police Department. He was the Chief of Police on January 30th and January 31st, 2018 to present.

16. Shannon Taylor is a Caucasian female.

17. Taylor has been Henrico Commonwealth's Attorney from 2015 to present.

18. Tania Kregar is a Caucasian female.

---

[9] http://www.wrightslaw.com/info/retal.primer.htm

19. Kregar is the Assistant Commonwealth Attorney for Henrico County. She served in that role on January 30th and January 31st, 2018 and continues to serve in that role to present.

20. L. Neil Steverson is a Caucasian male.

21. L. Neil Steverson is a District Court Judge for Henrico County in Virginia. He adjudicated the trespass cases against Lead Advocate Kandise Lucas and Dr. Marla Crawford on January 31, 2018.

22. Colonial Trails elementary school is located in Henrico County Virginia. CTE has a total population of 621 students of which a mere 8% are African American (49 of 621). Asian/Asian Americans constitute the large student population with Caucasian students ranking second. Of the 621 students only 4% (24 students) are eligible for free lunch and only 2% (12 students) are eligible for reduced lunch.[10] These statistics are indicative of the racial, ethnic, and class demographic of the school.

23. Colonial Trails Elementary School is a fully accredited elementary school. Accreditation is based on the student pass rate for the Standard of Learning (SOL) and the school attendance record. Therefore, attendance, of which tardiness is a part, directly impacts the accreditation of a school.[11]

24. Kandise Lucas is an African American female.

25. Kandise Lucas a Licensed Administrator and Educator by the Virginia Department of Education (VDOE) with a Certification in Administration and Supervision from Virginia Commonwealth University and an VDOE Endorsement in Administration and Supervision PK-

---

[10] https://www.publicschoolreview.com/colonial-trail-elementary-school-profile
[11] http://henricoschools.us/accreditation/

12; She also holds a Master's Degree in Special Education from Old Dominion University and received Endorsements from the VDOE in educating students with learning disabilities, educating students with intellectual disabilities, and educating students with emotional disabilities. She retains "highly qualified status" in all four common core areas: math, science, history and social studies, and English. She has her certification in Restorative Justice from Supreme Court of Virginia. In 2016, she was appointed, by Governor McAuliffe, to the Governors Cabinet for Childhood Success where she served as the Co-chair of the Sub-Committee for Children with Disabilities and 2018 was also appointed to the Work Group for Henrico County Public Schools Equity and Diversity Team. She is the founder of Advocates for Equity in Schools which is a member organization of the Dignity in Schools Campaign. She serves as a highly successful lead advocate wherein she focuses on protecting the rights of and advocating for parents and children with disabilities under Section 504 of the Rehabilitation Act of 1973 and IDEA. Henrico County Public School district is one of the primary districts that she conducts her work in. In 2011, Kandise Lucas brought suit against the Henrico County School Board for retaliation after she reported the child abuse and discrimination against students by school employees. In her role she has filed many due process complaints against Henrico County Public Schools. As a result of her successful and vocal advocacy, HCPS has had to expend school resources to pay legal fees in order to defend against the due process complaints that Lucas has initiated on behalf of Henrico County Public School parents, most notably legal fees paid to Reed Smith Law firm in Richmond VA. Recently, Lucas has been very vocal and active in bringing the tax payers' attention to the money that HCPS has invested in Reed Smith Law firm and the way that it has utilized Reed Smith to protect and defend the violation against children with special needs, especially African American children with disabilities

24. Dr. Marla Crawford is an African American female.

25. Dr. Crawford received her Ph.D. in Special Education Leadership from Capella University, a Masters in Education in Curriculum and Instruction from Virginia Commonwealth University, a Masters of Science Degree in Interdisciplinary Studies (Mathematics, Science, and Technology) from Virginia Commonwealth University and a Bachelors of Science in Biology Education from Virginia Union University. She has an Endorsement in Administration and Supervision PK-12 by the Virginia Department of Education; an endorsement in Special Education and endorsements in biology, chemistry, and mathematics. She also has her certification in Restorative Justice from the Supreme Court of Virginia. Dr. Crawford is the founder of Elite Educational Consulting which is a member organization of the Dignity in Schools Campaign. Dr. Crawford serves as Compliance and Policy analyst for IDEA, an independent evaluator for school districts within Virginia, and Educational Strategist. In these various roles, Dr. Crawford provides professional consulting, strategy, and advocacy for parents, students, schools, and community members under Section 504 of the Rehabilitation Act of 1973 and IDEA. As a result of Dr. Crawford's successful advocacy and expert testimony, which has been affirmatively cited, by Hearing Officers, in numerous due process reports, HCPS has lost several cases, including one very public one involving G.M.

26. Toni Hunter-Davis is an African American female.

27. Ms. Davis is the parent of M.A. She has her domicile in Henrico County. She is has been a resident of Henrico County and has never intended to seek permanent resident in another county. During the transitional period, Ms. Davis stayed in hotels when she was able to afford to and then stayed with a sister in Charles City in a "doubled up" status; before finding another home in Glen Allen, (Henrico County), on April 1, 2018.

28. The Equal Protection Clause and Due Process Clause of the 14th Amendment provides in pertinent part that no State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

29. **42 U.S. Code § 12182** states that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. (i) Denial of participation: It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

30. Section 504 of the Rehabilitation Act of 1973 **(42 U.S.C. §794 et. Seq.)** is a national law that protects qualified individuals from discrimination based on their disability. Section 504 forbids organizations and employers from excluding or denying individuals with disabilities an equal opportunity to receive program benefits and services. It defines the rights of individuals with disabilities to participate in, and have access to program benefits and services

31. The Americans with Disabilities Act **(42 U.S.C. 12101 et. Seq.)** gives civil rights protections to individuals with disabilities similar to those provided to individuals on the basis of race, color, sex, national origin, age, and religion. It guarantees equal opportunity for individuals with disabilities in public accommodations, employment, transportation, State and local government services, and telecommunications.

32. **(42 U.S.C. §1983)** provides every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress; **(42 U.S.C. §1985)** if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; **(42 U.S.C. §1986)** Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.

33. Prohibition Against Retaliation and Coercion under **42 U.S.C. § 12203 (A)** provides no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. (B) It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account

of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

34. Subject to the provisions of **42 U.S.C. § 12132**, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

35. Under the IDEA **Section 36.206** Retaliation or coercion: (a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part. (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part. (c) Illustrations of conduct prohibited by this section include, but are not limited to: (1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part; (2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation; (3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or (4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part. 28 CFR Sec. 36.206

36. In December 2017, Toni Hunter-Davis contacted Dr. Marla Crawford to seek her advisement regarding her son M.A. At that time, Colonial Trails Elementary School had demoted M.A from second grade to first grade. The school also considered M.A.'s tardies, that occurred as a result of his transitional crisis, a disturbance to the schools attendance record.

37. Dr. Marla Crawford agreed to serve as her advocate/strategist.

38. On January 2, 2018, Dr. Marla Crawford sent Henrico County Public School Board and Colonial Trails Elementary School a written complaint and advisement (Exhibit 1) that the school and school board were out of compliance. Specifically, she wrote: Let this letter serve as a formal communication of advisement that as an agent of Henrico County Public Schools (HCPS) and the administrator of Colonial Trail Elementary School, you are erring on being in noncompliance with the McKinney–Vento Homeless Assistance Act of 1987 (Pub. L. 100- 77, July 22, 1987, 101 Stat. 482, 42 U.S.C. § 11301 et seq.). This letter reiterated the rights provided under the McKinney-Vento Homeless Act of 1987.

39. Dr. Crawford's written complaint also stated: The noncompliance issues faced by your actions are as follow: • noncompliance of the McKinney-Vento Act of 1987 • equal access to the same educational programming, and • discrimination based on race, age and homelessness.

40. On January 3, 2018, after a conference with Principal Eggleston regarding M.A.'s academic progress, attendance, and his demotion from second to first grade, Dr. Crawford submitted a referral for evaluation to determine eligibility for support and services for special education under the IDEA to Colonial Trails Elementary School. This referral was addressed to Eggleston. Eggleston set an initial meeting for the eligibility process for January 18, 2018. This action provided federal protection for the child that, under IDEA, also extends to the parent and

advocates. This was in addition to the rights and protections under the McKinney-Vento Act of 1987.

41. The complaint and notification in the email correspondence provided to the Henrico County School Board and Colonial Trails Elementary School a constituted a protected activity.

42. Retaliation against any party for engaging in this protected activity is a violation of 42 U.S.C. § 12203.

43. Henrico County Public Schools Homeless Point of Entry coordinator found Toni Davis eligible under the McKinney-Vento Act of 1987 in 2017. The HCPS initially provided $20.00 gas cards for the mother to transport her son from Charles City to Colonial Trails. The parents unreliable transportation and economic hardship created a greater issue with her being able to transport her son. The parent did not view a transfer in the best interest of her son because 1) she was actively seeking another home in his school's district, 2) did not want to transfer him to another school only to transfer him back and most importantly 3) did not believe it in the best social or psychological interest of her son to be removed from his only other source of stability and familiarity, and abruptly be moved after only a short period again, especially at his age.

44. The McKinney-Vento Act requires that the school provide transportation for the child from his transitional location to the original school, and provides federal funds to public schools to handle cases that fall under the Act. The parent requested that CTE provide transportation in lieu of a gas card, to ensure that her son would continue to have access to a Free and Appropriate Education (FAPE) at his original school. When this request was made, Colonial Trails Elementary School, began plans to circumvent the requirement of the Act by petitioning approval to remove the child to a school in Charles City.

45. M.A. was still enrolled as a student of Colonial Trails Elementary School on January 30, 2018 and had not been officially withdrawn as of that date.

46. On January 30, 2018, Dr. Marla Crawford and Toni Hunter-Davis requested Lead Advocate Kandise Lucas accompany them to Colonial Trails Elementary School to address the schools petition and to clarify the family's accommodation rights under the McKinney-Vento Act

47. These were federally protected actions.

48. On January 30, 2018, Colonial Trails Principal Eggleston informed the parties that he would be unilaterally withdrawing M.A. from Colonial Trails Elementary on the directive of Interim State Superintendent Steven Constantino, who made an unlawful determination that it was in the child's best interest to attend school in Charles City in contravention of the McKinney-Vento Act.

49. Advocate Kandise Lucas and Dr. Marla Crawford informed Principal Eggleston that the family was covered under the McKinney-Vento Act and IDEA, and his attempts to unilaterally withdraw the child were illegal. The parties began to call "central office" to provide appropriate information. However, Eggleston refused to accept the validity of the federal laws and guidelines provided and continued to inform the parties that he would withdraw the child irrespective of federal law.

50. In response, Lucas filed a Due Process complaint to resolve the placement dispute via email on January 30, 2018 at 3:16 p.m, prior to end of the school day. (Exhibit 2).

51. Filing this due process complaint placed the child under "pendency status" under § 300.533, which states: "during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under § 300.507, unless the State

or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement."

52. Eggleston acknowledged that he received emailed notification of the timely due process complaint; but later carried out the involuntary and unlawful withdrawal of the child anyway. Thus, the Advocates demanded that the student be re-enrolled as a matter of federal law.

53. It is an undisputed fact that Kandise Lucas expressed her critical analysis that both the petition to withdraw and subsequent withdrawal (force-out) of the child was a violation of the child's civil rights that she believed to be racially and discriminatorily motivated.

54. Making this complaint was a federally protected act and any speech associated with her admonishment and critiques of motivations of individuals and/or individuals in their roles as agents/representatives of HCPS was federally protected speech. Critiques of racism, even where there is disagreement or discomfort, does not create criminal intent as a matter of law.

55. Eggleston became extremely agitated by Lucas' challenge of institutional racism and discrimination and escalated his attempts to make her to leave.

56. It is an undisputed fact that all parties responded on numerous occasions that they had a federal right to be at CTE and were acting under the protection of numerous federal laws and guidelines.

57. When the parties did not simply accept his decision to withdraw M.A as law, take M.A. and leave, because they believed the decision to be unlawful, Eggleston called Henrico County Police Department to have the parties removed or arrested for trespass.

58. HCPD arrived on the scene and asked the parties to voluntarily leave. At that point, the parties explained their reason for, and right to be at Colonial Trails Elementary School, re-asserting their "federal right" to ensure that M.A. would not be unlawfully "forced out" of his school (which established their bonafide claim of right) to be on the property of CTE.

59. HCPD did not remove, arrest, or issue the parties a Virginia Uniform Summons for trespass under VA Code § 18.2-119 or § 18.2-128 as would have been required by law "if the person is suspected of committing a misdemeanor criminal offense and it was committed in the presence of the officer." Six officers, including Officer Shanahan and Sergeant Crooks did remain on the scene in order to ensure that no incident occurred as the parties attempted to resolve the dispute.

60. The parties continued to assert that to withdraw the child from the school was illegal, and Lucas' continued to assert that the failure to respect the rights of the child was discriminatorily motivated, in an attempt to stop Eggleston from drawing up official withdrawal papers. Despite the plea and the fact that Lucas had filed a due process complaint that would stay any attempt to withdraw the child, Eggleston drew up withdrawal papers and began communicating with Charles City to transfer M.A. without the consent, agreeance, or authorization of the child's mother, Ms. Davis.

61. The parties informed HCPD and HCPS that they would return on January 31, 2018 to re-enroll the child back into the school. During that conversation, Sergeant Crooks informed the parties and school staff that he would return the next morning, not to effectuate an arrest or summons, but to be present to protect the rights of all parties. An email, (Exhibit 3), confirms that Eggleston informed Board Administrators that Crooks told him there would be problems if he did

not allow the student back to school. He also confirmed that Crooks would be returning in the morning.

62. The attempt to re-enroll M.A. in his school of origin was a protected activity and it included the First Amendment rights of Kandise Lucas, Dr. Marla Crawford, Toni Hunter-Davis, and the Fourteenth Amendment and other federal rights of M.A.

63. The parties provide records (Exhibit 4) that on the evening of January 30, 2018, with the prior knowledge that the parties would be returning to the school on January 31, 2018, Superintendent Kinlaw began to correspond with the "County Manager, the Chief of Police, the Commonwealth Attorney, and others" to orchestrate a way to "address" the parties' return in the absence of the HCPD's authority to arrest them for trespass.

64. In email correspondence, (Exhibit 5) school board and school officials expressed their agitation with the parties, the fact that they had other meetings on the agenda that they did not want the advocates return to interrupt, and that they feared further protest. Eggleston informed staff that he had no plans of having any more meetings with Lucas regarding the matter when she returned the next day.

65. Specifically, in an email (Exhibit 6) to school officials Superintendent Kinlaw stated a warrant for trespass would give the police "direction/authority" to address "the trespassers" when they return

66. On January 31, 2018, the parties returned to CTE to re-enroll M.A. Eggleston once again demanded that they leave. The advocates informed him that they were there to protect the "civil rights of this little Black child and committed to return every day until he was re-enrolled. Restating their "federal right" to be on the property to protect the rights of M.A. was their bonafide

claim of right, and their Constitutional right to protect the civil rights of M.A. free speech and right to peaceably assemble were all protected activities.

67. The parties sincere good faith belief that they had a "bona fide claim of right" to be at CTE to protect the federally protected rights of the parent and student, is an affirmative defense to trespass under both § 18.2-119 and § 18.2-128. None of the parties' actions constituted criminal intent, a required element for trespass.

68. During the attempts to re-enroll M.A, the parties requested a private place to further discuss the issue of the involuntary withdraw. However, Principal Eggleston, not the parties, refused to find a secluded and private location for them to sit and/or discuss the matter, as he had stated in his email. Instead Eggleston, demanded that the parties sit in the front lobby and say within a defined area in the front of the school, possibly under surveillance cameras. He also ordered the parties not to touch the front door, which knowingly would have precluded the parties from leaving. The area that Eggleston demanded the parties stay in was the very area he would claim (they) disturbed the students and the school in his complaint.

69. Henrico County Police Department officers were on the scene from the time the parties arrived at CTE on January 31, 2018, and again at no point ordered the parties to leave under the threat of arrest, arrested, or cited them with a Virginia Uniform Summons for trespass in violation of any VA Code, including 18.2-119-18.128 (or disorderly conduct) because no enforceable violation occurred.

70. Lucas publically announced through a Facebook communique that the parties would be engaged in a "sit in" until HCPS respected the family's rights under McKinney-Vento and IDEA and allowed him back to school. During their time in the front lobby, Dr. Crawford

continued efforts to get an overturn of the decision, remaining on her cell phone with the school officials in an attempt to encourage them to enforce the federal mandate and re-enroll M.A. in CTE.

71. At approximately 9:00 a.m., knowing that HCPD did not have the state or Constitutional authority to arrest the parties, Eggleston staged a false lockdown at CTE, in the presence of HCPD officers who were already on the scene *before* the lockdown was called. This "lockdown" was not based on a "real threat," did not adhere to any of the HCPS lockdown protocol, did not secure the building, did not remove and or address the parties, lasted for about 45 minutes, and did not disrupt either students, teachers or the "normalcy" of the instructional day. The circumstances of the "lockdown" were instead fabricated by Eggleston for the purpose of establishing grounds for swearing out a summons.

72. In response to inquiries about the "staged lockdown," at 10:08 a.m. on January 31, 2018, (Exhibit 7) Andy Jenks sent out an email correspondence to School Board and other officials stating that the advocates and the family are "staging a sit in. They refused to leave (peaceful protest) and they remain in the lobby as of this writing." He furthered, "Instruction continued normally. The school delineated a line that these folks shall not cross."

73. At 11:58 a.m., (Exhibit 8) as the advocates and parent continued to be seated in the lobby as instructed by the Eggleston, Jenks composed an email for Eggleston to send out to the parents that confirmed "All students are fine and our school day is moving along normally...We did call a lockdown earlier today in response to a *situation* involving several adults...classroom instruction continued normally the entire time."

74. Despite Jenks assertion that there was no disruption by the parties or to the school and/or students and "that classroom instruction continued normally the entire time," shortly thereafter, Eggleston went to the magistrate to swear out the summons for trespass, citing the "staged lockdown" to justify the perception of the parties as "disruptions" and threats to the students and the staff. As a result, summons were issued against Kandise Lucas, Dr. Marla Crawford, and Toni Hunter-Davis, without their knowledge.

75. Declarations provided by school staff (Exhibit 9) show that school staff who were supposed to have been adversely affected by the parties, were charged and/or engaged in making sure the parties <u>did not</u> leave the school. This is so they could be served with the unlawfully obtained summonses. The declarations also show that staff were providing updates on the parties whereabouts to CTE Administrators, and when Lucas left for another meeting, they went so far as to characterize her as "fleeing the scene" because "she must have found out about the summons."

76. Dr. Marla Crawford and Ms. Toni Davis were served by HCPD officers in the parking lot as they were leaving CTE. When Dr. Crawford refused to accept the unlawfully obtained summons, Officer Shanahan, who was present throughout the morning at HCPS and did not arrest the parties, threw the summons in Crawford's car hitting Dr. Crawford in her face. On the summons for Dr. Crawford, it stated that she was served by arrest, although she was never arrested. Officer Ferguson of HCPD served the summons on Toni Hunter-Davis.

77. Records show (Exhibit 10) that after the summonses were issued, Kinlaw communicated confirming the issuance and service of the summonses for Davis and Crawford. He re-affirmed that he was in touch with the County Manager, the Chief of Police, and the Commonwealth Attorney and was happy that they intervened. He advised all that they would serve Lucas later at her home.

78. On the evening of January 31, 2018, Eggleston sent out a letter to concerned parents (Exhibit 11) that there was never a threat and never any disruption to the normal classroom instruction which contradicted the facts he cited in the summons. In fact, while he knew the "adults" were advocates, and that he had just withdrawn M.A from school the day before, he assured parents that they were not CTE parents. He further confirmed "we would like to thank our police partners for their assistance. I know our Superintendent joins me in hoping that the Commonwealth's Attorney's Office will prosecute the matter to the fullest extent of the law as a deterrent to similar conduct in the future." This statement assured, that by the concerted effort and actions of the defendants, in pre- Civil Rights Act of 1964 and Brown v. Board of Education 1954 fashion, the freedom of speech, the right to peaceably assemble, and the advocacy for the civil rights of Black children would be classified as "criminal activity" punishable by law in 2018.

79. Later that evening, five HCPD officers arrived to Lead Advocate Kandise Lucas' home to serve her with the summons.

80. On February 1, 2018, Lucas submitted a complaint for investigation to Commonwealth Attorney Shannon Taylor requesting that she investigate the unlawfully obtained summons secured under false pretenses by HCPS School Board and Eggleston, further requesting that the case not be prosecuted. Shannon Taylor did not respond.

81. On February 1, 2018, Lucas submitted a complaint for enforcing an unlawfully obtained summons to Chief of Police Cardounel.

82. Lucas submitted subpoenas for the HCPS emails from January 30th to January 31st to prepare the parties defense. When she went to the court to get the information, Lucas was told that

Judge L. Neil Steverson instructed the Clerk of the Court not to release the emails to Advocate Lucas.

83. The court clerk allowed the Commonwealth's Attorney to sign for the email records subpoenaed by Kandise Lucas. The Commonwealth, to this date, has never released the evidence directly to any of the parties to that trespass case and the judge never released or explained his barring the defendants from having access to the evidence that they, themselves, subpoenaed. The records contained exculpatory evidence that was essential to the defense.

84. On (Exhibit 12), Kandise Lucas filed a thorough Motion to Dismiss citing her bonafide claim of right defense and the lack of criminal intent as an essential element to trespass under § 18.2-119 and § 18.2-128. The District Court Judge refused to rule on it.

85. The court transcript identifies in countless locations, that at trial, Judge Steverson and Tania Kregar, who was in possession of exculpatory evidence, worked in concert to confine evidence and witness testimony in the case to January 31, 2018, knowing that it would severely restrict the defendants from providing context and producing evidence, for the record, to support the bonafide claim of right defense. It also reflects countless locations where Judge Steverson allowed Kregar to make unsubstantiated objections and sustained them without her ever having to assert her grounds. Transcripts reflect that Steverson took a judgmental and hostile tone toward the defendants, specifically Lucas, linked Crawford in with Lucas by default, and refused to give them a just opportunity to present a defense and be legitimately heard. In fact, when Sergeant Crooks who was present on January 30, 2018, and did not arrest the parties was on the stand, the Judge appeared to work in protection of the Commonwealth's case to ensure that he would not be able to provide testimony on the parties' purpose for being there on the 30th and his promise to return.

going down the hallway just causing destruction everywhere you went, certainly disruption everywhere you went." Material evidence in the Commonwealths possession proved that they were seated and confined to the front lobby with a line not to cross at Eggleston's demand. "Oh no, if this isn't trespassing on school property there never will be a case. I find you both guilty as charged." Despite being in possession of exculpatory evidence, neither did the Commonwealth disclose the evidence or object to the severe mischaracterizations of the facts in evidence, evidence that the defendants subpoenaed and were restricted from both collecting from the Clerk and presenting in court. Steverson furthered his presence of impartiality by further admonishing the "defendants" from invoking "civil disobedience" and racism by entering his own lengthy soliloquy about how his personal experience with discrimination and protest as a White male in the 1960's somehow gives him the judicial power and authority to impose, discredit, and undermine the critiques of racism and the experiences of three African American women who were on the property in their role of advocates upon their "federal right to advocate for the civil rights of a Black child" to be included in Colonial Trails Elementary School.

90. The District Court found the parties guilty and imposed a one year suspended sentence on the grounds that they be banned from Henrico County Public School property, staff, and students indefinitely

91. Lucas asked the Court, what if we have children in HCPS, to which Judge Steverson replied, "you forfeit that right."

92. In isolation, the ruling may not give rise to a "Color of Law" question. However, in an almost parallel case of trespass in violation of §18.2-119 involving Joseph Szakos, a white male activist, who challenged Anthem Blue Cross/ Blue Shield for raising his rates, who occupied the Anthem corridor, blocking the doors and waging his objections, wherein Anthem had him arrested

85. Sergeant Crooks committed perjury on several occasions, specifically when he stated he did not speak with the "defendants," "did not know they would be returning the next day," "and did not state that he would be returning."

86. Records show that the Commonwealth was in possession of evidence that proved that Crooks committed perjury but did not notify the court or raise an objection as is required.

87. Transcripts (Exhibit 13) also show that the Commonwealth engaged the in a highly prejudicial line of questioning about Dr. Crawford's intent and character. The Commonwealth asked Dr. Crawford if she "gets paid" for her advocacy? As Dr. Crawford is in the middle of providing her answer, Judge Steverson interrupts and asks, "Does that have anything to do with this...?" At which point Kregar comfortably interjects, "It's her motivation, Judge." While the judge responds to Crawford, who is pro se, if you object I would sustain it, he does not admonish the Commonwealth for the record. The Plaintiffs understand

88. Court transcripts show that the parties continued to state and present their bonafide claim of right defense and the lack of criminal intent throughout the trial to the judge, who ignored the legal implications and case law precedent of their defense, instead creating one for Lucas, stating that Lucas' criminal intent was "unprofessionalism," (Exhibit 14) but never requiring the Commonwealth to prove one or establishing one, as a matter of law, for Crawford.

89. Upon his ruling (Exhibit 15), without having been present at the scene, Steverson conjectured, "The school was in turmoil for just about the entire school day." Material evidence in the Commonwealths possession proved that at no point was the school ever in turmoil. "And you are saying you weren't disruptive." Material evidence in the Commonwealths possession proved that the parties were sitting in the front lobby engaged in "peaceful protest. "It's like two tornados

going down the hallway just causing destruction everywhere you went, certainly disruption everywhere you went." Material evidence in the Commonwealths possession proved that they were seated and confined to the front lobby with a line not to cross at Eggleston's demand. "Oh no, if this isn't trespassing on school property there never will be a case. I find you both guilty as charged." Despite being in possession of exculpatory evidence, neither did the Commonwealth disclose the evidence or object to the severe mischaracterizations of the facts in evidence, evidence that the defendants subpoenaed and were restricted from both collecting from the Clerk and presenting in court. Steverson furthered his presence of impartiality by further admonishing the "defendants" from invoking "civil disobedience" and racism by entering his own lengthy soliloquy about how his personal experience with discrimination and protest as a White male in the 1960's somehow gives him the judicial power and authority to impose, discredit, and undermine the critiques of racism and the experiences of three African American women who were on the property in their role of advocates upon their "federal right to advocate for the civil rights of a Black child" to be included in Colonial Trails Elementary School.

90. The District Court found the parties guilty and imposed a one year suspended sentence on the grounds that they be banned from Henrico County Public School property, staff, and students indefinitely

91. Lucas asked the Court, what if we have children in HCPS, to which Judge Steverson replied, "you forfeit that right."

92. In isolation, the ruling may not give rise to a "Color of Law" question. However, in an almost parallel case of trespass in violation of §18.2-119 involving Joseph Szakos, a white male activist, who challenged Anthem Blue Cross/ Blue Shield for raising his rates, who occupied the Anthem corridor, blocking the doors and waging his objections, wherein Anthem had him arrested

for trespass, the exact same District Court found "Evidence showed that customers are permitted in the main entrance where Szakos attempted to enter Anthem's Richmond headquarters in July. Evidence also showed that Szakos was …following the instructions Anthem security had given him"-undisputed evidence provides the identical situation in this case. However, disparately, *the exact same* Judge L. Neil Steverson, who stereotypically labeled his assessment of the African American female advocates opposition to the decisions of CTE and convicted *them* of trespass, banning *them* indefinitely, including ruling that *they forfeit their rights* as parents, ruled "not to convict Szakos for trespassing on *his own insurance company's property*,"[12] ruling that he had the right to question and protest the decisions of his insurance company, where a mother and advocates have no right to question or protest the decisions of their children's school.[13] (Exhibit 15a)

93. The parties filed an appeal on April 26, 2018.

94. Davis was again recertified for McKinney-Vento in March 2018 after M.A. had already been accepted to John B. Cary Elementary School in Richmond City under the McKinney Vento Act without conflict, as Henrico County Public Schools, was required, by law, to do. There was never a "break" in her eligibility and CTE remained M.A.'s original school. Richmond City Public Schools is a predominantly African American school district.[14]

---

[12] https://shadowproof.com/2009/11/25/charges-dropped-against-joe-szakos-the-anthem-blue-cross-customer-arrested-for-questioning-rate-increases/

[13] http://www.dailyprogress.com/news/city-based-activist-s-trespassing-charge-could-get-dismissed/article_d91dff91-f9fa-5488-be2e-755e9436a0da.html

[14] While Toni Hunter-Davis did find a home in Glen Allen (Henrico County) in Henrico County on April 1, 2018, for stability purposes under the McKinney-Vento Act, M.A. remains in Richmond City Schools without incident. Unlike HCPS, Richmond City has followed the federal law providing transportation both from Charles City and Henrico.

95. The parties filed a request for an internal investigation into perjury against Sergeant Crooks on May 22, 2018 with Henrico County Police Department Office of Professional Standards. (Exhibit 16)

96. In an effort to still mitigate this escalating controversy, the Advocates requested that the Commonwealth file a Motion to Vacate by 6/4/18 at Noon, (Exhibit 17) based on the suppression of exculpatory evidence, subordination of perjury, and selective prosecution on the basis of race, which would have been appropriate given plain error. The Commonwealth did not respond.

97. To answer the request, the Commonwealth filed a Motion for Joinder on 6/4/18 (Exhibit 18). In the lengthy motion, the Commonwealth affirms each of the defendants claims of defense by affirming their bonafide claim of right (federal right to be here to protect the rights of the child), failing to provide evidence of criminal intent, and citing elements of Lucas' critique of racism and discrimination as criminal in contravention of her First Amendment rights. The Commonwealths motion for joinder that looks more like a complaint further fails to provide any evidence before the Circuit that anyone at CTE ever asked the other parties to leave the premises other than Lucas. Specifically she states before the Circuit Court, "Crawford was "calling various individuals on her speaker phone discussing the situation in a fashion audible to anyone in the hallway," as stated in this Complaint. In this Motion for Joinder submitted to the Circuit Court, Kregar now offers a contradictory explanation for the lockdown, now stating, that "a second grade teacher and the guidance counselor decided amongst themselves to put the school on lockdown," a feat that, in their roles, they are neither authorized or equipped to do, one that the librarian testified that she was "just told" to do it. District Court (Exhibit 19).

98. The Advocate for the parties wrote an email demanding that the stay that is required under appeal be honored and that HCPD be prohibited from calling authorities on the parties as they continue their work. However, since the plaintiffs filed the appeal, while HCPS has not called HCPD, Henrico County Public Schools has continued to disenfranchise and coerce parents from retaining Advocate Lucas and Dr. Crawford by refusing to work with parents who use their services, and not returning correspondence regarding violations, cancelling meetings in which the advocates are involved, stating to parents that they will not meet with advocates, and further retaliating against the advocates by interfering with their business and reputation. Most importantly, HCPS has been issuing summons for the arrests of parents who are working with the advocates on the grounds of truancy in order to coerce, intimidate, and violate the parents' rights in retaliation for their work with the parties.

## CAUSES OF ACTION

99. Plaintiffs put forth their claim that *each and every* allegation contained in this cause of action was done with malicious, intentional, and reckless disregard for the Constitution and the federal laws set forth herein, as well as the privilege and protection that Congress intended each to provide to the Plaintiffs, the minor child, and the classes of citizens that each represents.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 12182 and 42 U.S.C. § 12132

100. Plaintiffs allege that the withdrawal of M.A from school arises out of HCPS and Principal Kirk Eggleston's refusal to provide appropriate accommodation for the family under IDEA in order to deny access and accommodation to his enjoyment of Colonial Trails Elementary School in violation of 42 U.S.C. 12182.

101. Plaintiffs allege that Henrico County Public Schools and Principal Eggleston denied the federal rules of domicile and "doubled up" under the McKinney Vento Act in order to "force" the withdraw of the student from CTE in order to circumvent having to provide accommodations for the student under Section 504 of the Rehabilitation Act of 1973 in violation of 42. U.S.C. 12132.

## SECOND CAUSE OF ACTION

### 42 U.S.C. 1983, 1985 and 1986; Color of Law

### Violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments

102. Plaintiffs re-allege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

103. Plaintiffs allege that the removal of M.A. from Colonial Trails Elementary School and the denial of Toni Davis' federally protected status was motivated by race and denied him of his Fourteenth Amendment Protection in violation of 42 U.S.C. 1983.

104. Plaintiffs allege that Superintendent Kinlaw and Principal Eggleston did maliciously conspire to seek an unlawful and otherwise unenforceable summons against the parties for trespass in violation of the parties' rights and protections under the First and Fourth Amendment of the United States Constitution and in violation of the laws of this section.

105. Plaintiffs allege that Superintendent Kinlaw and Principal Eggleston did maliciously conspire to seek a unlawful and unenforceable summons for trespass against the parties for the purpose of infringing on their right to enforce or attempt to enforce the civil rights and protections

of M.A. in violation of the Fourteenth Amendments to the United States Constitution and in violation of the laws of this section.

106. Plaintiffs allege that HCPD Police Chief Cardounel did conspire with Superintendent Kinlaw and Principal Eggleston to advise them on how they could provide the police with the "direction/authority" to "address" the parties as trespassers in violation of their Fourth and Fourteenth Amendment protections under the United States Constitution and in violation of the laws of this section.

107. Plaintiffs allege that Police Chief Cardounel and Sergeant Crooks failed to prevent defendant HCPS from obtaining an unenforceable and unlawful summons knowing that no violation had occurred in violation of the parties Fourth and Fourteenth Amendment rights under the United States Constitution.

108. Plaintiffs allege that HCPD officers serving unlawful summonses where no violation or arrests had occurred, throwing the summons in the face of Dr. Crawford, stating that the summons had been served on Crawford by arrest, thereby creating an arrest record on Crawford, and sending five officers to the home of Kandise Lucas unlawful acts of intimidation, harassment, coercion, and retaliation in violation of their Fourth and Fourteenth Amendment Rights.

109. Plaintiffs allege that Superintendent Kinlaw did conspire with Commonwealth Attorney Shannon Taylor on January 30, 2018 before the summonses for trespass were sworn to "address" the parties return on January 31, 2018. Plaintiffs further allege that after 2 of the parties were served on January 31, 2018, Kinlaw did again conspire with Shannon Taylor to prosecute the trespass case against the parties based on an unlawfully obtained summons, and that Shannon Taylor did maliciously prosecute the matter in the interest of Kinlaw and HCPS, rather than in the

interest of the public, justice, and the State. This, despite facts present and known, including the fact that the police had made no arrests, her prior knowledge and familiarity with the well-known role and work of Lucas and Crawford, and with knowledge that the summons was sworn based on false claim, thus providing evidence that that would prove that no violation under the Virginia Code § 18.2-119 or § 18.2-128 had 'truly' occurred in violation of the parties Fourth, Fifth, Sixth, and Fourteenth Amendment protection under the United States Constitution and in violation of the laws of this section.

110. Plaintiffs allege that Police Chief Cardounel did conspire with Shannon Taylor to "cover" for the fact that no arrest had been made in violation of § 18.2-119 or § 18.2-128 on either January 30, 2018 or January 31, 2018, and that the summons for trespass that was sworn by Principal Eggleston on January 31, 2018, lacked legal grounds and foundation and was sworn and issued under false statement and grounds making the summons unlawful.

110. Plaintiffs allege that Shannon Taylor and Tania Kregar did conspire to deliberately: ignore Lucas' complaints about the unlawful summons, fail to investigate, and then withhold, suppress, and fail to disclose, either timely or at trial, material exculpatory evidence that would qualify as "Brady material" under *Brady v. Maryland, 373 U.S. 83 (1963)* because it proved that the "sworn statement" cited in the summons was false; procure the perjury of Sergeant Crooks, in violation of 18 U.S. Code § 1622, and; present other evidence and testimony they knew to be false, in order to prejudice the Court and achieve a wrongful conviction against the parties in violation of the parties Fourteenth Amendment Rights under the United States Constitution.

111. Plaintiffs allege that Shannon Taylor and Tania Kregar did conspire to produce evidence of fraud against Toni Hunter-Davis in an effort to coerce her into taking a plea and intimidate and hinder her from interacting with her advocates and pursuing any further action

against HCPS in violation of her Fourteenth Amendment protection under the United States Constitution.

112. Plaintiffs allege that Judge L. Neil Steverson did conspire with the Commonwealth in order to deny the parties' access to material exculpatory evidence petitioned under their own subpoena in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

113. Plaintiffs allege that Judge L. Neil Steverson did conspire with the Commonwealth to deny the parties a fair and impartial trial by failing to adhere to judicial procedure, including the denial of the right to be heard, the failure to impartially apply the elements of law, and the imposition of subjective judgment, in violation of the Sixth Amendment to the United States Constitution.

114. Plaintiffs allege that Judge L. Neil Steverson's directive to withhold exculpatory evidence from the defense was in violation of the parties' right to due process in violation of the Fifth, Sixth, and Fourteenth Amendments.

115. Plaintiffs allege that Judge L. Neil Steverson's refusal to review the pre-trial Motion to Dismiss and refusing to hear and/or rule on the Motion to Dismiss raised at trial was in violation of the parties' right to due process in violation of the Fifth and Fourteenth Amendments.

116. Plaintiffs allege that Judge L. Neil Steverson's suppression of exculpatory evidence at trial was in violation of the parties' right to due process in violation of the Fifth, Sixth, and Fourteenth Amendments.

117. Plaintiffs allege that Judge L. Neil Steverson's failure to allow Crawford to be judged outside of his animus toward Lucas, represented a prejudicial joinder, and was in violation of Crawford's right to due process in violation of the Fifth, Sixth, and Fourteenth Amendments.

118. Plaintiffs allege that Judge L. Neil Steverson's failure to require "Madam Commonwealth" to provide grounds for objections and consistently sustaining them without regard or context violated the parties' rights to due process in violation of the Fifths, Sixth, and Fourteenth Amendments.

119. Plaintiffs allege that Judge L. Neil Steverson's conviction of the parties contravened the well-established defenses and elements required to prove violations of VA Code § 18.2-119 and § 18.2-128 and was never valid as a matter of law in violation of the parties Fourteenth Amendment Rights to the United States Constitution.

120. Plaintiffs allege that Judge L. Neil Steverson's ruling banning the parties from Henrico County Public Schools property, staff, and students indefinitely to include "forfeiting" their rights and access as parents of Henrico County Public School children, maliciously extended the scope of the charge in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

121. Plaintiffs allege that Judge L. Neil Steverson's disparate ruling in an exact case involving a white male activist occupying Anthem Blue Cross Blue Shield wherein he acquitted the white male activist of all charges, praising him for "trespassing on his own insurance companies property," while convicting the parties, who are Henrico County citizens and taxpayers, and HCPS parents, as well as bonafide professionals and advocates with state and federal certifications, and referring to _them_ as "tornadoes going down the hall causing destruction to everything in their paths" gives rise to a discriminatory impropriety and stereotypical bias that influenced his unjust conduct in the court and his disparate and discriminatory ruling in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## SECOND CAUSE OF ACTION

### 29 U.S.C. 504 (Rehabilitation Act of 1973)
### IDEA, 504 (Rehabilitation Act of 1973)

122. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

123. Plaintiffs allege that Henrico County Public Schools and Colonial Trail did violate M.A.'s right to a free and public education by involuntarily withdrawing him from school in contravention of the McKinney Vento Act of 1987 and violation of the IDEA, 504 (Rehabilitation Act of 1973).

124. Plaintiffs allege that Superintendent Patrick Kinlaw, as a representative of the Henrico County Public School Board, in concert with all named parties did conspire to orchestrate the circumstances to support the false arrest, malicious prosecution and wrongful conviction, and banning of Kandise Lucas and Dr. Marla Crawford from Henrico County Public Schools in order to deny the public access to aggressive and effective advocacy in violation of 29 U.S.C. 504 (Rehabilitation Act of 1973).

125. Plaintiffs allege that the series of actions initiated by HCPS against the parent and advocates represents retaliation under 29 U.S.C. 504 (Rehabilitation Act of 1973).

126. The Plaintiffs allege that Principal Eggleston did maliciously and willfully deny the students protection under the McKinney-Vento Act in order to withdraw M.A. from Colonial Trails Elementary School and circumvent having to provide services under 29 U.S.C 504 (Rehabilitation Act of 1973).

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 12203 (Americans with Disabilities Act of 1990, ADA)

127. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

128. Plaintiffs reallege all claims set forth in the Second Cause of Action in violation of 42. U.S.C. 12203 of the Americans with Disabilities Act of 1990.

129. Plaintiffs allege that Eggleston did contact police and swear out an unlawful summons in retaliation for the advocates attempting to enforce the rights and protections of M.A. under 42. U.S.C. 12203 of the Americans with Disabilities Act of 1990.

130. Plaintiffs allege that Principal Eggleston did maliciously deny the students protection under the McKinney-Vento Act in order to withdraw M.A. from Colonial Trails Elementary School as retaliation for the advocates' attempts to enforce his rights and protections in violation of 42 U.S.C. 12203.

## FOURTH CAUSE OF ACTION

### Article I, sections 1, 2, 3, 8, 10, 12 of the Virginia Constitution

131. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

132. Plaintiffs reallege all allegations set forth in the Second Cause of Action.

## FIFTH CAUSE OF ACTION

### Va. Code § 2.2-3900 and § 2.2-3901 Virginia Human Rights Act

133. Plaintiffs Lucas and Crawford allege that all actions taken against them in their roles of Advocates and Experts in the Henrico County Public School district represent discrimination based on their protected status as African Americans and females in violation of Va. Code § 2.2-3900 and § 2.2-3901.

## SIXTH CAUSE OF ACTION

### Va. Code § 18.2-500(A) and Virginia Code § 18.2-499.

134. Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

135. Plaintiffs allege that Henrico County Public School Board, Patrick Kinlaw, Colonial Trails Elementary School Principal Kirk Eggleston, Henrico County Police Chief Humberto Cardounel, Commonwealth Attorney, Shannon Taylor, and Assistant District Attorney Tania Kregar did "combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever" with the intention of "(iii) preventing or hindering another from doing or performing any lawful act. That is the Plaintiffs allege that the defendants did combine and conspire to put together a plan of action to not only address Lucas and Crawford's role of enforcing and protecting M.A.'s rights as the advocates, but to abuse the resources of the state and the public trust to create a narrative that was designed to injure both the reputation, business, and profession of the two so that they would not be able to "practice and perform" their advocacy in the County of Henrico.

## PRAYER FOR RELIEF
### Declaratory Relief

136. Whereas the Plaintiffs pray that the District Court consider the magnitude of this Complaint against HCPS and HCPD, and defendants Patrick Kinlaw, Kirk Eggleston, and Humberto Cardounel, and encourage the court to consider the magnitude of the alleged actions- to the larger issues of the public interest, public trust, racial, gender, and disability justice and progress that Brown v. Board of Education of 1954; the Civil Rights Act of 1964; the Americans with Disabilities Act of 1990; Section 504 of the Rehabilitation Act of 1973, and the Constitution of the United States sought to provide- to citizen members of disenfranchised classes. The Plaintiffs ask the Court to take judicial note that the allegations of the underlying controversy-of the denial of federal services and the subsequent removal of a Black child from CTE in Henrico County to Richmond City Public Schools wherein he was certified, and the advocacy for inclusion- has historic context. In the underlying controversy, Plaintiffs ask the Court to consider that perhaps M.A. in 2016 is Ruby Bridges in 1960. Thus, the Plaintiffs pray for declaratory relief in the manner that the District Court deems just and proper.

137. Plaintiffs pray that the District Court weigh the magnitude of this Complaint against the Henrico Commonwealth Attorney's Office, and defendants Shannon Taylor and Tania Kregar, and its implication to the larger issue of the public interest, public trust, and the larger issues of justice, equity, and Constitutional protection as established in the Fourteenth Amendment to the United States Constitution, the Plaintiffs pray that the Court will uphold accountability as provided in the Model Rules of Professional Conduct, as well as the laws set forth herein, and provide declaratory relief in the manner in which the District Court deems just and proper.

138. Plaintiffs pray that the District Court understand the magnitude of the complaint against District Court of Henrico Judge L. Neil Steverson and the implications that the conduct throughout the trial of the parties as alleged in this complaint presents. Where it shall be proven

to be discriminatory, exclusionary, and unjust, or where such conduct shall present to the Court even the appearance of impropriety and bias in and to the sanctity of the judicial machinery and the fair and impartial application of the rule of law-the Plaintiffs pray that the District Court take judicial note on the larger issue of public trust and equal justice, and uphold accountability as provided in the Model Rules of Judicial Conduct (Canons); most notably Canons 2.2, 2.3, 2.6, 2.8, 2.15 as well as the Constitutional provisions and laws set forth herein, providing declaratory relief in the manner in which the District Court deems just and proper therefrom.

139. Plaintiffs pray in addition to any declaratory relief deemed just and proper by the Court, the Plaintiffs pray for a declaratory judgment that Defendants' policies, practices and conduct as alleged herein violate Plaintiffs' rights under the United States Constitution, the Virginia Constitution, and all federal laws cited in the Complaint, and that said conduct poses the threat to the public interest by creating conditions that would dissuade individuals from challenging discrimination for fear of state reprisal and abuse.

### Injunctive Relief

140. The alleged conduct of the defendants set forth in this Complaint represents a blatant and disregardful violation of the Constitutional and federal rights of the Plaintiffs and the classes to which they belong, classes that have a history of political, social, and economic disenfranchisement based on racial and gender discrimination. Moreover, it represents the alleged disregard for the rights of students of color and students with disabilities, which is indicated by Henrico County Public Schools published leading status on the discrimination and disparate treatment of African American students with disabilities. Thus, the accolades provided in Eggleston's email thanking his "police partners" for the victory and joining Superintendent Patrick Kinlaw in encouraging the Commonwealth to prosecute the advocates and parent to the fullest

extent of the law, which it did, in order to "deter similar conduct in the future" may set a precedent for the establishment of future strategies. Therefore, the Plaintiffs pray the Court provide injunctive relief:

141. Whereas, the Plaintiffs move this court for Injunctive Relief: an Order that Plaintiffs shall not be banned and/or prohibited from engaging in their federally protected roles and responsibilities in Henrico County Public Schools, and that HCPS shall be prohibited from exploiting its access to the state and state resources, and its misapplication of state Code §18.2-119 and/or §18.2-128, or any other statute, for the purpose of hindering, impeding, or to coerce, intimidate, obstruct, or interfere in the parties rights to protect and enforce the rights of parents and students of HCPS under each of the laws set forth herein.

142. Plaintiffs move this Court for Injunctive Relief: an Order requiring the defendant's to comply with Federal law regarding the Individuals with Disability Act (IDEA), and its corresponding federal and state regulations and policies, and the Regulations Governing Special Education Programs for all Children with Disabilities in Virginia.

143. Plaintiffs move this Court for Injunctive Relief: and Order prohibiting Henrico County Public Schools from retaliating against the advocates or parents who seek advocacy by Kandise Lucas and Dr. Marla Crawford, and or engaging in tactics such as avoidance, denial, or threats that they will not cooperate with Lucas and Crawford, such as failure to respond to correspondence, calls, requests, meetings etc. regarding active cases and inquiries.

144. Plaintiffs move this Court for Injunctive Relief: and Order prohibiting Henrico County Police Department now and in the future from any form of conspiracy, coercion, intimidation,

harassment, and any other conduct that may violate the Constitutional rights and protections of Kandise Lucas, Dr. Marla Crawford, and Toni Hunter-Davis.

## Damages

WHEREAS the Plaintiffs complain that the entire course of action against Toni Hunter-Davis/M.A., Lead Advocate Kandise Lucas, and Dr. Marla Crawford that constitutes this claim originates from the malicious, intentional, and wanton disregard for the Constitutional and federally protected rights of each of the parties and the conduct of Henrico County Public School Board, Superintendent Patrick Kinlaw, and Colonial Trails Elementary School Kirk Eggleston, the Plaintiffs pray any and all monetary relief including compensatory and punitive damages (treble damages) in the amount of ten million ($10,000,000.00) dollars; cost of suit; any other relief required by law; and any other relief that the Court deems just and proper against defendant Henrico County Public School Board.

**Leave to Amend**

Plaintiffs request leave to join other defendants to conspiracy claim as upon discovery of additional parties under FRCP 20 (a)(2)(A) and (B), and as provided by law and request the preservation of the leave to amend this complaint under FRCP 15(a)(1)(B) and FRCP 15(d).

**A TRIAL BY JURY IS DEMANDED**

**Respectfully Submitted On Behalf Of The Plaintiffs:**

Toni Hunter-Davis, *pro se*
9600 Links Way, Unit N
Glen Allen, Va 23059
323-399-8072
Misshunter76@gmail.com

Dr. Marla F. Crawford, *pro se*
6523 South Stevens Hollow Drive
Chesterfield, Virginia 23238
(804) 397-4480 (Cell)
mcrawford@capellauniversity.edu

Kandise N. Lucas, *pro se*
514 East Williamsburg Rd
Sandston, Virginia 23150
804-248-8656
clucasklucas@yahoo.com

39

## Certificate of Service

We certify that on June 11, 2018, a copy of this civil action was filed with the Clerk of Eastern

District Court and copies were also hand-delivered to the following Defendants on the same day:

1) **Judge L. Neil Steversen,**
   4301 East Parham Road, Henrico, VA 23273-0775

2) **Commonwealth Attorney Shannon Taylor**
   4301 East Parham Road, Henrico, VA 23273-0775

3) **Assistant Commonwealth Attorney Tania Kregar**
   4301 East Parham Road, Henrico, VA 23273-0775

4) **Chief of Police, Humberto Cardounel**
   7721 E. Parham Rd., Henrico, VA 23228

5) **Office Patrick Crook**
   7721 E. Parham Rd. Henrico, VA 23228

6) **Henrico County Public Schools, School Board**
   3820 Nine Mile Road Henrico, Virginia 23223

7) **Superintendent Patrick Kinlaw**
   3820 Nine Mile Road, Henrico, Virginia 23223

8) **Principal Kirk Eggleston**
   3820 Nine Mile Road, Henrico, Virginia 23223

Henrico County Police Dept
7721 E Parham Rd
Henrico, VA. 23228

6/13/2018
10:34am

Best Regards,

Toni Hunter-Davis, *pro se*

Marla F. Crawford, *pro se*

Kandise N. Lucas, *pro se*