IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KANDISE LUCAS, *et al.*,  )
  )
       Plaintiffs,  )
  )
v.  ) Civil Action No. 3:18cv402–HEH
  )
HENRICO COUNTY PUBLIC  )
SCHOOL BOARD, *et al.*,  )
  )
       Defendants.  )

## <u>MEMORANDUM OPINION</u>
(Defendants' Motions to Dismiss and Plaintiffs' Motion to Disqualify Defense Counsel)

This matter is before the Court on Defendants' five Motions to Dismiss[1,2], filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as well as Plaintiffs' Motion to Disqualify Defense Counsel (ECF No. 37). Plaintiffs' Complaint contains

---

[1] Defendants filed five separate Motions to Dismiss on August 1, 2018. Defendants Henrico County Public School Board ("HCPS Board"); Patrick Kinlaw, the Superintendent of Henrico County Public Schools; Kirk Eggleston, the Principal of Colonial Trails Elementary; the Henrico County Police Department ("HCPD"); Humberto Cardounel, the Henrico County Police Chief; and Police Sergeant P.F. Crooks jointly filed a Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("County 12(b)(1) Mot.," ECF No. 17). HCPD, Cardounel, and Crooks jointly filed a Motion to Dismiss for Failure to State a Claim ("HCPD-Cardounel-Crooks 12(b)(6) Mot.," ECF No. 20). HCPS Board, Kinlaw, and Eggleston jointly filed a Defendants' Motion to Dismiss for Failure to State a Claim ("HCPS Board-Kinlaw-Eggleston 12(b)(6) Mot.," ECF No. 23). Defendant L. Neil Steverson, a General District Court Judge in Henrico County, also filed a Motion to Dismiss (ECF No. 25). Finally, Defendants Shannon Taylor, the Henrico County Commonwealth's Attorney, and Tania Kregar, an Assistant Commonwealth's Attorney, jointly filed their own Motion to Dismiss (ECF No. 27).

[2] Defendants HCPS Board and HCPD contend that the Complaint misstates their names, which are, respectively, "County School Board of Henrico County" and "Henrico County Police Division." (*See* Mem. in Supp. HCPS Board-Kinlaw-Eggleston 12(b)(6) Mot., ECF No. 24; Mem. in Supp. HCPD-Cardounel-Crooks 12(b)(6) Mot., ECF No. 21.) For consistency, the Court will use the parties' names as stated in the Complaint.

seven (7) counts that allege statutory violations of state and federal law as well as violations of the United States and Virginia Constitutions.[3] (Compl. 28–36, ECF No. 1.) All parties have filed memoranda supporting their positions, and the Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court. *See* E.D. Va. Local Civ. R. 7(J).

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true Plaintiffs' well-pleaded allegations and views the Complaint in the light most favorable to Plaintiffs because they are the non-moving party. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). However, the Court is not required to accept the Complaint's legal conclusions that are drawn from the facts, nor must the Court accept as true unwarranted inferences or unreasonable conclusions and arguments. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).

So viewed, the Complaint establishes that Plaintiff Hunter-Davis experienced "a homeless and transitional crisis," that resulted in her moving from Henrico County,

---

[3] The Complaint contains two separate counts that are both labeled as Plaintiffs' "Second Cause of Action." (Compl. 29, 34.) For clarity, the Court will refer to the latter of the two counts as "Count IIA" of the Complaint. In Count I, Plaintiffs allege violations of Titles II and III of the Americans with Disabilities Act ("ADA"). (*Id.* ¶¶ 100–01.) Count II alleges violations of 42 U.S.C. §§ 1983, 1985, and 1986. (*Id.* ¶¶ 102–21.) Count IIA alleges violations of the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act. (*Id.* ¶¶ 122–26.) Count III alleges a violation of 42 U.S.C § 12203. (*Id.* ¶¶ 127–30.) Count IV alleges violations of Article I, sections 1, 2, 3, 8, 10, and 12 of the Virginia Constitution. (*Id.* ¶¶ 131–32.) Count V alleges violations of the Virginia Human Rights Act under Va. Code Ann. §§ 2.2-3900 and 3901. (*Id.* ¶ 133.) Finally, Plaintiffs' Count VI alleges violations of Va. Code Ann. §§18.2-499 and 500(A). (*Id.* ¶¶ 134–35.)

Virginia to Charles City, Virginia, where she resided with her sister for an unspecified period of time. (Compl. ¶¶ 7–8, ¶ 8 n.7.) As a result of this move, a residency dispute arose between Hunter-Davis and the HCPS Board because Hunter-Davis's minor son ("M.A.") continued to attend school at Colonial Trials Elementary ("CTE" or "the school") in Henrico County. (*Id.* ¶¶ 7–8, 45.) For a period of time, Hunter-Davis received assistance from HCPS in the form of gas cards, which financially supplemented her ability to transport M.A. between Charles City and Henrico County for school. (*Id.* ¶ 43.) However, when Hunter-Davis could no longer provide reliable transportation to get M.A. to and from school, a "determination [was made] that it was in the child's best interest to attend school in Charles City . . . ." (*Id.* ¶¶ 43–48.)

On January 31, 2018, Hunter-Davis, along with Plaintiffs Lucas and Crawford, who the Complaint describes as "advocates," challenged M.A.'s withdrawal from CTE by staging a "sit-in" at the school. (*Id.* ¶¶ 66–70.) As a result of their actions, Plaintiffs received summons for trespass and were later convicted of trespassing on school property, in violation of Va. Code Ann. § 18.2-128. (*Id.* ¶¶ 76–79, 90.) A brief summation of the events that preceded their convictions follows.

**A. Events at Colonial Trails Elementary**

On January 30, 2018, Plaintiffs went to CTE where Defendant Eggleston, the school's principal, informed them that M.A. would be withdrawn from the school per "the directive of Interim State Superintendent Steven Constantino . . . ." (*Id.* ¶¶ 46–48.) The Complaint characterizes this decision as "unlawful" and "in contravention of the

3

McKinney-Vento Act."[4] (*Id.* ¶ 48.) In response, Lucas emailed a "Due Process complaint" to Constantino, which the Complaint concludes placed M.A.'s case in a "pendency status" that required that he "remain in his . . . current educational placement." (*Id.* ¶¶ 50–51, Ex. 2.) Nevertheless, M.A. was withdrawn from the school on January 30, 2018. (*Id.* ¶ 52.)

Lucas informed the school's staff that the "withdrawal (force-out) of the child was a violation of the child's civil rights that she believed to be racially and discriminatorily motivated." (*Id.* ¶ 53.) "Eggleston became extremely agitated by Lucas'[s] challenge of institutional racism and discrimination" and he asked that she leave the school. (*Id.* ¶ 55.) When Plaintiffs refused to leave, Eggleston contacted the police. (*Id.* ¶ 57.)

After the police arrived, "[t]he parties continued to assert that to withdraw the child from the school was illegal, and Lucas[] continued to assert that the failure to respect the rights of the child was discriminatorily motivated . . . ." (*Id.* ¶ 60.) Thereafter, the parties informed school staff and the police that they would return on the following day "to re-enroll the child back into the school." (*Id.* ¶ 61.)

On the following day, January 31, 2018, Plaintiffs returned to the school, and Eggleston "once again demanded that they leave." (*Id.* ¶ 66.) However, "[t]he advocates informed [Eggleston] that they were there to protect the []civil rights of this little Black child and committed to return every day until he was re-enrolled."[5] (*Id.*) They also

---

[4] The Court need not accept Plaintiffs' repeated legal conclusions that the actions of various Defendants were "unlawful" or "in contravention of the McKinney-Vento Act."

[5] Attached to the Complaint as Exhibit 9 is Eggleston's written recollection of the events of January 31, 2018. (Compl. Ex. 9.) The exhibit provides additional details regarding Lucas's statements to the

4

informed Eggleston that they had a "federal right" to be on the school's property. (*Id.*)

Lucas announced via Facebook that Plaintiffs were engaged in a "sit-in" at CTE. (*Id.* ¶ 70.) Subsequently, a "lockdown" of the school ensued. (*Id.* ¶¶ 71–72.) Thereafter, "Eggleston went to the magistrate to swear out the summons for trespass, citing the 'staged lockdown' to justify the perception of the parties as 'disruptions' and threats to the students and the staff." (*Id.* ¶ 74.) Henrico County Police then served Crawford and Hunter-Davis with misdemeanor trespass summonses while they were still in the school's parking lot. (*Id.* ¶ 76.) Lucas, who had left the school before the police could serve her with a summons, was served later that evening. (*Id.* ¶ 79.)

**B. State Court Proceedings**

Prior to being tried in Henrico County General District Court, Plaintiffs attempted to challenge the validity of the trespass summonses. Specifically, Lucas submitted a complaint to Defendant "Shannon Taylor requesting that she investigate the unlawfully obtained summons secured under false pretenses by [the] HCPS School Board and Eggleston," and "requesting that the case not be prosecuted." (*Id.* ¶ 80.) According to the Complaint, the Commonwealth's Attorney did not respond to either request. (*Id.*) Lucas also sent a complaint to Defendant Police Chief Cardounel, based upon his "enforcing an unlawfully obtained summons . . . ." (*Id.* ¶ 81.)

Despite these efforts, Lucas and Crawford were tried in Henrico County General

---

school's staff. At one point, Lucas asked Eggleston, "How does it feel to be a white supremacist man picking on little black boys and denying them their education[?]" (Compl. Ex. 9 at 1.) Lucas also told another school employee, who was an African-American female, "You have sold out to the white man. You have sold out. You should be ashamed of yourself." (*Id.*)

5

District Court before the Honorable L. Neil Steverson.[6] (*Id.* ¶ 21.) The Complaint states that, "Judge Steverson and Tania Kregar, who was in possession of exculpatory evidence, worked in concert to . . . restrict the defendants from providing context and producing evidence, for the record, to support the bonafide claim of right defense." (*Id.* ¶ 85.) The Complaint also states that Police Sgt. Crooks, who responded to CTE on January 30, 2018, perjured himself during Plaintiffs' trial and that the Commonwealth "did not notify the court or raise an objection as is required." (*Id.* ¶¶ 61, 85–86.) Finally, "the Advocates requested that the Commonwealth file a Motion to Vacate [their convictions] by 6/4/18 at Noon, based on the suppression of exculpatory evidence, subordination of perjury, and selective prosecution on the basis of race . . . ." (*Id.* ¶ 96) (citation omitted).

Ultimately, Plaintiffs were convicted of trespassing on school property in violation of Va. Code Ann. § 18.2-128. (*Id.* ¶ 90; Mem. in Supp. County 12(b)(1) Mot. Exs. 1, 3, 4.) As a condition of their suspended sentences, the court ordered that Plaintiffs "be banned from Henrico County Public School property, staff, and students indefinitely." (Compl. ¶ 90.) Plaintiffs have appealed their convictions to the Circuit Court of Henrico County, and a trial has been set for September 26, 2018. (*Id.* ¶ 93; Mem. in Supp. County 12(b)(1) Mot. Ex. 2.)

### C. Federal Court Proceedings and Nature of Relief Sought

In addition to appealing their convictions through the state court system, Plaintiffs filed the current matter in this Court, seeking a combination of equitable relief and

---

[6] The Complaint is silent as to whether Judge Steverson also presided over the separate trial of Plaintiff Hunter-Davis.

damages.[7] Among other things, Plaintiffs seek an injunction to limit the condition of their suspended sentences, asking that "Plaintiffs [] not be banned and/or prohibited from engaging in their federally protected roles and responsibilities in Henrico County Public Schools . . . ." (Compl. ¶ 141.) Plaintiffs also seek injunctions requiring Defendants to comply with IDEA and other federal laws, prohibiting retaliation against Plaintiffs, and ordering the HCPD to refrain from future violations of Plaintiffs' constitutional rights. (*Id.* ¶¶ 140–44.) Finally, Plaintiffs seek $10,000,000.00 in compensatory and punitive damages from the HCPS Board. (*Id.* 40.)

## II. STANDARD OF REVIEW

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's jurisdiction over the subject matter of a complaint. Such challenges can be facial, asserting that the facts as pled fail to establish jurisdiction, or factual, disputing the pleadings themselves and arguing that other facts demonstrate that no jurisdiction exists. *Lufti v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013) (citing *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). If a defendant raises a factual challenge, "the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citation omitted). Consideration of evidence outside of the pleadings on a 12(b)(1)

---

[7] Plaintiff Hunter-Davis has also filed a separate IDEA Complaint with this Court based on the same circumstances that are at issue in the current matter. (*See* 3:18cv319–MHL) (filed on May 14, 2018). Plaintiffs' Complaint in the current matter was filed on June 11, 2018.

motion does not necessarily convert the motion to one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted); *McBurney v. Cuccinelli*, 616 F.3d 393, 409 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part) (motions under Rule 12(b)(1) are not restricted by Rule 12(d)). Regardless of whether the challenge is facial or factual, the plaintiff bears the burden of proof to preserve jurisdiction. *Jadhav*, 555 F.3d at 348; *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Meanwhile, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). To survive a Rule 12(b)(6) challenge, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). To do so, it must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Id.* Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" to a level that is "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570 (citations omitted). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc.*,

385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Even viewing Plaintiffs' allegations in the Complaint in their favor, as the Court must, Plaintiffs' Complaint cannot survive initial review for a variety of reasons. First, with respect to Counts I, II, and IIA of the Complaint, Plaintiffs lack Article III standing to bring those claims. In addition, Plaintiff Hunter-Davis cannot bring her own IDEA claim under Count IIA because her claims are duplicative of another IDEA action currently pending in this Court. Second, to the extent that Plaintiffs have standing to bring their own claims under Count II, they are barred by the *Rooker-Feldman* doctrine and *Younger* Abstention. Third, Count III must be dismissed because it fails to state a claim under 42 U.S.C. § 12203. Finally, each of the aforementioned Counts represent the totality of Plaintiffs' federal claims in this case. Therefore, because Counts I–III of the Complaint must be dismissed, the Court will decline to entertain Plaintiffs' state law claims in Counts IV–VI.

### 1. Plaintiffs Lack Standing to Bring Counts I, II, and IIA

Plaintiffs state that they brought "this complaint for violations of their individual and associated rights . . . ." (Compl. 2.) However, Defendants challenge Plaintiffs' standing to bring these three claims that properly reside with Hunter-Davis's minor son, M.A., who is not a party to this case. (Mem. in Supp. County Defendants' 12(b)(1) Mot. 10–15.) Specifically, Defendants argue that Plaintiffs' claims under Titles II and III of the ADA (Count I), 42 U.S.C §§ 1983, 1985, and 1986 (Count II), and Section 504 of the

9

Rehabilitation Act and the IDEA (Count IIA) must be dismissed to the extent that each claim is derived from injuries that M.A. suffered. (*Id.*) The Court agrees.

A. Standing

"[S]tanding to maintain a suit implicates the court's jurisdiction to entertain a suit," and therefore, standing is "a threshold question to be resolved before the merits." *Beyond Sys. v. Kraft Foods, Inc.*, 777 F.3d 712, 715–16 (4th Cir. 2015) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–102 (1998)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

The doctrine of standing is derived from Article III of the Constitution, which requires that federal courts limit their jurisdiction to actual cases and controversies. To show that a case or controversy exists for purposes of Article III standing, a plaintiff must show: (1) he has suffered an injury-in-fact (as opposed to a hypothetical injury), (2) the injury was caused by the complained-of conduct of the defendant, and (3) the injury is likely to be redressed by a court's favorable decision. *Steel Co.*, 523 U.S. at 102–04. While the Supreme Court has described these three requirements as the "irreducible constitutional minimum of standing," *id.* at 103 (quoting *Def. of Wildlife*, 504 U.S. at 560), the Supreme Court has also recognized that "there may be circumstances where it is necessary to grant a third-party standing to assert the rights of another," *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). The Court has limited so-called "third-party

standing," by requiring that "a party seeking third-party standing make two additional showings." *Id.* at 130. To establish third-party standing, a plaintiff must also show "a close relationship between herself and the person whose right she seeks to assert" and "a hindrance to the third party's ability to protect his or her own interests." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002) (citing *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991)).

## B. Plaintiffs Lack Standing on Count I (Titles II and III of the ADA)

The Complaint alleges that "Henrico County Public Schools and Principal Eggleston . . . 'force[d]' the withdraw[al] of the student from CTE . . ." in violation of Title II of the ADA, 42 U.S.C. § 12132. (Compl. ¶ 101.) Count I also alleges a violation of Title III of the ADA; specifically, that "the withdrawal of M.A. from school arises out of . . . [the] refusal to provide appropriate accommodation for the family under IDEA in order to deny access and accommodation to his [M.A.'s] enjoyment of Colonial Trails Elementary School in violation of 42 U.S.C. [§] 12182." (*Id.* ¶ 100.)

Based upon the plain language of the Complaint, the injury-in-fact that is the basis of both allegations—the withdrawal of M.A. from Colonial Trails Elementary—was suffered by M.A. and not by Plaintiffs. Even viewing these allegations generally, Count I fails to establish that Plaintiffs *personally* suffered discrimination based upon a disability. *See Def. of Wildlife*, 504 U.S. at 563 ("But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.") (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972)).

11

Furthermore, Plaintiffs fail to plead facts that establish their ability to pursue ADA claims based upon third-party standing. As "advocates" for the family, Plaintiffs Lucas and Crawford do not hold the type of close relationship to M.A. that enables them to sue on his behalf. While Hunter-Davis arguably holds such a relationship as M.A.'s parent, she is precluded from bringing a third-party claim on his behalf in a *pro se* status. *See Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 401 (4th Cir. 2005) (stating that the Fourth Circuit "join[s] the vast majority of our sister circuits in holding that non-attorney parents generally may not litigate the claims of their minor children in federal court.") (citations omitted); *see also Augustine ex rel. M.A. v. Winchester Pub. Sch. Dist.*, No. 5:13cv25, 2013 U.S. Dist. LEXIS 132637, at *4 (W.D. Va. Sept. 17, 2013) (affirming the magistrate judge's report and recommendation and dismissing the complaint because, among other reasons, plaintiff could not bring a *pro se* action on behalf of two minors).

Therefore, because Count I fails to establish that Plaintiffs suffered an injury-in-fact, and because Plaintiffs cannot bring claims on M.A.'s behalf, Count I must be dismissed for lack of standing.[8]

---

[8] While the Court dismisses Count I for lack of Article III standing, the Court also notes that Plaintiffs have failed to allege that M.A. was disabled *and* that he was discriminated against on the basis of a disability—elements which Plaintiffs must sufficiently plead for Count I to survive dismissal under Rule 12(b)(6). *See Spencer v. Earley*, 278 F. App'x. 254, 261 (4th Cir. 2008) (stating that claims under 42 U.S.C § 12132 or Section 504 of the Rehabilitation Act both require pleading "(1) [the plaintiff] has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was 'excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of h[is] disability.'") (quoting *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)). In the current matter, the Complaint does not definitively state that M.A. was disabled. At most, Plaintiffs' Complaint states that M.A. "was referred for 'evaluations of a *suspected* disability under IDEA,' . . . ." (Compl. ¶ 7) (emphasis added).

In addition, Title III of the ADA is inapplicable in the current matter. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of

## C. Plaintiffs Lack Standing on Count II (42 U.S.C. §§ 1983, 1985, and 1986)

In Count II of the Complaint, "Plaintiffs allege that the removal of M.A. from Colonial Trails Elementary School and the denial of Toni [Hunter-]Davis's federally protected status was motivated by race and denied him of his Fourteenth Amendment Protection in violation of 42 U.S.C. [§] 1983." (Compl. ¶ 103.) To the extent that Plaintiffs claim that Defendants' combined actions violated M.A.'s constitutional rights under the Equal Protection Clause, Plaintiffs lack standing to assert such a claim for the same reasons stated in the previous section of this Memorandum Opinion. Consequently, Count II of the Complaint is dismissed to the extent that it seeks to bring a claim that properly belongs to M.A.[9]

## D. Plaintiffs Lack Standing on Count IIA (Section 504 of the Rehabilitation and IDEA)

Regarding Plaintiffs' claims under the IDEA, the Supreme Court has stated, "*Parents* enjoy rights under IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own behalf." *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535

---

public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. "The term 'place of public accommodation,' however, applies only to *private entities* providing public accommodations, not to *public entities*." *Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 759 (M.D. N.C. 2005) (citations omitted). Here, Colonial Trails Elementary School is a public entity, not a private entity providing a public accommodation. *See id.* at 760 (dismissing plaintiff's claim under 42 U.S.C. § 12182 because it was brought against the University of North Carolina at Greensboro, a public university); *see also Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1036 (6th Cir. 1995) (holding that Title III did not apply to discrimination on public school grounds or in public parks). Therefore, in addition to the lack of Article III standing, Plaintiffs' Count I must also be dismissed because it fails to sufficiently allege claims under Titles II and III of the ADA.

[9] To the extent that Plaintiffs allege that their *personal* constitutional rights have been violated, Plaintiffs' claims must likewise be dismissed for reasons discussed in Section (III)(2) of this Memorandum Opinion.

(2007) (emphasis added). While Hunter-Davis, as M.A.'s parent, can bring *her own pro se* action under the IDEA, the Court is aware of no precedent that enables educational advocates such as Lucas and Crawford to bring their own private causes of action—nor have they brought any supporting authority to the Court's attention. To the contrary, "[t]he IDEA does not . . . establish a private right of action for special-education teachers or other advocates for disabled students." *J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11cv707-D, 2014 U.S. Dist. LEXIS 134342, at *20 (E.D. N.C. Sept. 24, 2014) (citations omitted). Accordingly, Lucas and Crawford's claims under the IDEA must be dismissed for lack of standing.

To the extent that Hunter-Davis seeks to bring her own IDEA claim, she is likewise precluded from doing so because she has already filed a duplicative IDEA action in this Court. *See Hunter-Davis v. Henrico County School Board*, 3:18cv319–MHL (filed on May 14, 2018). *Cf. Fox Group, Inc. v. Cree, Inc.*, 749 F. Supp. 2d 410, 416 (E.D. Va. 2010) ("[W]hen two identical actions are pending at the same time in two federal courts, the first-filed action is generally preferred, 'even if it is a request for a declaratory judgment.'") (quoting *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 15 (D. Mass 2002)). Because the current matter was filed on June 11, 2018, after Hunter-Davis filed her other IDEA complaint with this Court, and because that suit arises out of the same circumstances as this case, judicial economy dictates that Hunter-Davis's duplicative IDEA claim in this case be dismissed.[10] *Id.*

---

[10] The dismissal of Hunter-Davis's IDEA claim in this case does not address the merits of the claims that she raises in her other IDEA suit which is still before the Court.

("The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources.") (quoting *Samsung Elecs. Co. v. Rabius, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005)).[11]

## 2. Rooker-Feldman and Younger Abstention Doctrines Bar Plaintiffs' Individual Claims under Count II

In Count II of the Complaint, Plaintiffs allege that Defendants entered into multiple conspiracies in order to unlawfully serve, prosecute, and ultimately convict Plaintiffs of trespassing on school grounds in violation of Va. Code Ann. § 18.2-128. Plaintiffs allege that Defendants' actions violated their constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. However, as Plaintiffs' prayer for relief makes clear, the purpose of their claims under Count II of the Complaint is *to vacate a condition of their suspended sentences*. Specifically, Plaintiffs ask that this Court enter an order to modify the sentence imposed by Judge Steverson, such that "Plaintiffs [] not be banned and/or prohibited from engaging in their federally protected roles and responsibilities in the Henrico County Public Schools . . . ." (Compl. ¶ 141.) In effect, Plaintiffs urge this Court to impermissibly review the providence of the state court's judgment.

The *Rooker-Feldman* doctrine prevents lower federal courts from hearing cases

---

[11] Plaintiffs have also failed to allege facts that plausibly state a claim that M.A. suffers from a disability and that he was discriminated against on the basis of this disability. *See* 29 U.S.C. § 794 ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."). Therefore, Plaintiffs' claims under Section 504 of the Rehabilitation Act must be dismissed for failure to state a claim.

where a plaintiff, under the auspice of bringing a constitutional claim, seeks "review of, or relief from, a state action or proceeding that is essentially judicial in nature." *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 228 (4th Cir. 1997). *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. App. v. Feldman*, 460 U.S. 462 (1983). The doctrine applies where a plaintiff brings a claim in federal court seeking review of a matter adjudicated by a state court or inextricably intertwined with the state court's judgment, or where the plaintiff otherwise had the opportunity to raise that claim during state proceedings. *See Feldman*, 460 U.S. at 482 n.16. "[I]f 'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual,' *Rooker-Feldman* is implicated." *Jordahl v. Democratic Party*, 122 F.3d 192, 202 (4th Cir. 1997) (quoting *Ernst v. City of Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)) (also citing *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)).

Here, as the plain language of the Complaint makes clear, the purpose of Plaintiffs' claims is to modify an operative portion of the state court's judgment. Thus, in accordance with the *Rooker-Feldman* doctrine, this Court cannot entertain Plaintiffs' claims under Count II of the Complaint.

In addition, this Court is also precluded from considering Plaintiffs' claims under Count II based upon the closely allied doctrine of judicial restraint articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), a similar albeit distinct doctrine from *Rooker-Feldman*. In *Younger*, the Supreme Court stated that "courts of equity

should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43–44. *Younger* Abstention requires a federal court to abstain from interfering in a state proceeding (even if there is jurisdiction), if there is:

> (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit.

*Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008) (quoting *Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005)).

Each of the above factors are squarely met in the immediate case. First, Plaintiffs' state court cases were decided and appealed prior to the filing of their action in this Court, and therefore, their criminal cases are currently pending trial in Henrico County Circuit Court. Second, the state judicial system of the Commonwealth of Virginia has a vital interest in adjudicating violations of state statues, such as the school trespass statute that is in question here. Finally, because Plaintiffs' case will be retried in the circuit court, Plaintiffs have an adequate opportunity to argue the legal contentions that they seek to adjudicate here. While Plaintiffs argue that exceptions to *Younger* are present in the current case, Plaintiffs' lengthy arguments are not persuasive.

Because their criminal trials are still pending in Henrico County Circuit Court, this Court is precluded from hearing Plaintiffs' claims in Count II based upon the application of both the *Rooker-Feldman* and *Younger* Abstention doctrines. Therefore, Count II will

be dismissed.

### 3. Plaintiffs' Count III Fails to State a Claim under Title V of the ADA

Plaintiffs' Count III alleges violations of Title V of the ADA. In addition to reaffirming all of Plaintiffs' previous allegations, Count III alleges primarily that Principal Eggleston "did contact police and swear out an unlawful summons in retaliation for the advocates attempting to enforce the rights and protections of M.A. under 42 U.S.C. [§] 12203 . . . ." (Compl. ¶ 129.) Count III also alleges that the withdrawal of M.A. from the school was "retaliation for the advocates attempts to enforce his rights and protections . . . ." (*Id.* ¶ 130.)

Section 12203 "bars employers from retaliating against employees for seeking [the ADA's] statutory protections." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 430 (4th Cir. 2015). Here, it is clear that Principal Eggleston is not an "employer," nor are any of the Plaintiffs alleged to be "employees" of HCPS. Therefore, Plaintiffs' Count III fails to state a plausible claim on its face and must be dismissed.

### 4. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiffs' Remaining State Claims

Having dismissed Plaintiffs' federal claims for reasons discussed *supra*, this Court need not reach Plaintiffs' remaining Counts IV–VI. *See* 28 U.S.C. § 1367(c)(3) ("District Courts may decline to exercise supplemental jurisdiction over a claim . . . [where] the district court has dismissed all claims over which it has original jurisdiction . . . ."). Because Plaintiffs' remaining claims arise under the laws and constitution of the Commonwealth of Virginia, the Court will not exercise supplemental jurisdiction to

resolve them.

## IV. CONCLUSION

For all these reasons, Plaintiffs' Complaint will be dismissed in its entirety. Plaintiffs' Motion to Disqualify Defense Counsel will therefore be denied as moot. Also, Defendants' numerous motions raise alternate theories of dismissal that are not addressed by this Memorandum Opinion. In the interest of deciding this case on the narrowest grounds possible, to the extent that this Memorandum Opinion has not addressed Defendants' alternate theories, they will be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Sept. 19, 2018
Richmond, VA