**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

KANDISE LUCAS, *et al.,*                )
                                        )
                 Plaintiffs,            )
                                        )
v.                                      )        Civil Action No. 3:18cv402–HEH
                                        )
HENRICO COUNTY PUBLIC                   )
SCHOOL BOARD, *et al.,*                 )
                                        )
                 Defendants.            )

## MEMORANDUM OPINION
### (Defendants' Renewed Motions to Dismiss)

This matter is before the Court on remand from the United States Court of Appeals

for the Fourth Circuit (ECF No. 59).[1]  On September 19, 2018, this Court issued a

Memorandum Opinion, dismissing the entirety of Plaintiffs'—Kandise Lucas, Marla

Crawford, and Toni Hunter-Davis ("Plaintiffs")—Complaint on various grounds (ECF

No. 48).  On April 12, 2019, the Fourth Circuit vacated and remanded this Court's

dismissal of Plaintiffs' federal civil rights claims as to Defendants Henrico County Public

School Board ("HCPS Board"), Superintendent Patrick Kinlaw ("Kinlaw"), Principal

Kirk Eggleston ("Eggleston"), Henrico County Police Department ("HCPD"), Police

Chief Humberto Cardounel ("Cardounel"), and Police Sergeant P.F. Crook ("Crook").[2]

---

[1] Because the Plaintiffs in this case are *pro se*, this Memorandum Opinion is lengthier and
contains more explanation than is customary for this Court.

[2] Defendants HCPS Board and HCPD contend that the Complaint misstates their names, which
are, respectively, "County School Board of Henrico County" and "Henrico County Police
Division." (*See* Renewed Mot. to Dismiss for Failure to State a Claim, ECF No. 62.)  For
consistency, the Court will use the parties' names as stated in the Complaint.  Because this

The Fourth Circuit also vacated and remanded the dismissal of Plaintiffs' state law claims.

Following the Fourth Circuit's remand, these Defendants filed their Renewed Motion to Dismiss for Failure to State a Claim on May 20, 2019 (ECF No. 61). Plaintiffs filed their Response on June 7, 2019 (ECF No. 69).[3] The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court. *See* E.D. Va. Local Civ. R. 7(J).

## I. BACKGROUND

On June 11, 2018, Plaintiffs filed a seven-count Complaint with this Court against nine Defendants, alleging various violations of federal and state law.[4] (*See* Compl., ECF No. 1.) This Court dismissed the entirety of Plaintiffs' Complaint by Memorandum Opinion. (ECF No. 48.) On Plaintiffs' appeal, the Fourth Circuit affirmed the majority of this Court's ruling dismissing all of Plaintiffs' claims. However, the Fourth Circuit vacated and remanded Plaintiffs' federal civil rights claims as to Defendants HCPS Board, Kinlaw, Eggleston, HCPD, Cardounel, and Crook, under Plaintiffs' First Second

Memorandum Opinion largely focuses on only Defendants Kinlaw, Eggleston, Cardounel, and Crook, where appropriate, these Defendants collectively will simply be referred to as "Defendants."

[3] On August 22, 2019, Plaintiff Crawford also filed a Motion to Sever (ECF No. 72), seeking to sever her claim.

[4] For a more extensive summation of the facts, see this Court's first Memorandum Opinion in this case. (ECF No. 48.)

2

Cause of Action ("Count II").[5] This Court had dismissed those claims on the grounds that it lacked subject matter jurisdiction under the *Rooker-Feldman*[6] doctrine, or in the alternative, that it was required to abstain under the *Younger*[7] doctrine. The Fourth Circuit disagreed, and remanded the federal civil rights claims to this Court for a determination that was consistent with the Fourth Circuit's opinion. However, the Fourth Circuit upheld the dismissal of the federal civil rights claims as to Defendants Shannon Taylor ("Taylor"), Tania Kregar ("Kregar"), and Judge L. Neil Steverson ("Steverson"), as those claims are barred by prosecutorial and judicial immunity. Finally, because this Court dismissed the state law claims by declining to exercise supplemental jurisdiction in the absence of any remaining federal cause of action, the Fourth Circuit remanded those claims as well.

Accordingly, this Court will review Plaintiffs' Complaint, along with the accompanying Renewed Motions to Dismiss,[8] as to only the federal civil rights claims

---

[5] The Complaint contains two counts that are both labeled as Plaintiffs' "Second Cause of Action." (Compl. at 29, 34.) In its previous Memorandum Opinion, this Court referred to the First Second Cause of Action as Count II. For the sake of consistency with its prior opinion, this Court will continue to refer to this cause of action as Count II.

[6] *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

[7] *Younger v. Harris*, 401 U.S. 37 (1971).

[8] Defendants Taylor, Kregar, and Steverson submitted Renewed Motions to Dismiss (ECF Nos. 63, 66), re-asserting their defenses of sovereign and absolute immunity as to the state law claims alleged in Plaintiffs' Complaint. However, this Court need not address these defenses for reasons discussed in Section III.F of this Memorandum Opinion.

3

alleged in Count II—specifically 42 U.S.C. §§ 1983, 1985, and 1986[9]—and as alleged

against only Defendants HCPS Board, Kinlaw, Eggleston, HCPD, Cardounel, and Crook,

and the state law claims alleged in the Fourth, Fifth, and Sixth Causes of

Action ("Counts IV–VI").

For the reasons stated, the Court will grant Defendants' Renewed Motion to

Dismiss (ECF No. 61) as to the remaining claims in Count II under Fed. R. Civ. P.

12(b)(6), and will decline to exercise supplemental jurisdiction as to Counts IV–VI.

Accordingly, Plaintiffs' Complaint will be dismissed.

## II.    STANDARD OF REVIEW

"A motion to dismiss under Rule12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

(4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only

'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.

Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual

allegations," but must contain "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Id.* at 555 (citations omitted). Thus, the

---

[9] This Court need only address the federal civil rights allegations contained in Count II, as the Fourth Circuit remanded only those claims back to this Court for further consideration.

4

"[f]actual allegations must be enough to raise a right to relief above the speculative level"
to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570.

"[O]nly a complaint that states a plausible claim for relief survives a motion to
dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 556).
In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and
the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son,
Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation
omitted). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

The Court also acknowledges that *pro se* complaints are afforded a liberal
construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Court,
however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* Nor
does the requirement of liberal construction excuse a clear failure in the pleading to
allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387,
390–91 (4th Cir. 1990). As the Fourth Circuit articulated in *Beaudett v. City of Hampton,*
"[p]rinciples requiring generous construction of *pro se* complaints are not . . . without
limits." 775 F.2d 1274, 1278 (4th Cir. 1985). "Though [*pro se*] litigants cannot, of
course, be expected to frame legal issues with the clarity and precision ideally evident in
the work of those trained in law, neither can district courts be required to conjure up and
decide issues never fairly presented to them." *Id.* at 1276.

While a motion to dismiss tests the sufficiency of a complaint, courts may
consider documents that are either "explicitly incorporated into the complaint by
reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs.*

5

*Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." *Id.* at 166 (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). This is based on "the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents of that document." *Id.* at 167. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it," and it should consider whether plaintiff relied on the attachment for its truthfulness. *See id.* at 167–69; *see also Wallace v. Baylouny*, No. 1:16-cv-0047, 2016 WL 3059996, at *4 (E.D. Va. May 31, 2016).

## III.    DISCUSSION

### A. Defendant HCPD is an Improper Party

Defendant HCPD is an improper party in this action, as HCPD is not an entity capable of being sued. State law determines whether a governmental body has the capacity to be sued in federal court. Fed. R. Civ. P. 17(b). "In Virginia, departments of municipal governments are not capable of being sued in their own names." *Allmond v. Sec. 8 Dep't of Hous.*, No. 03-894-A, 2003 WL 23784041, at *2 (E.D. Va. Sept. 25, 2003). Notably, several courts in this Circuit have dismissed claims against police departments in Virginia, holding that they lack the capacity to be sued. *See, e.g., Harrison v. Prince William Cty. Police Dept.*, 640 F. Supp. 2d 688, 711 (E.D. Va. 2009); *Muniz v. Fairfax Cty. Police Dept.*, No. 1:05CV466, 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005); *Estate of Harris v. Arlington Cty.*, No 99-cv1144, 2000 WL 34477900, at

6

*3 (E.D. Va. Jan. 14, 2000) (granting summary judgment in favor of the Arlington County Police Department as to plaintiff's §§ 1981, 1983, and 1985 claims based on its finding "that the police department is not an entity capable of being sued"); *Hearn v. Hudson*, 549 F. Supp. 949, 952 n.1 (W.D. Va. 1982) ("It appears that nothing in Virginia law recognizes municipal police departments as entities separate from their respective municipalities. Nor does anything in Virginia law support a direct action against a police department as an entity separate from the municipality itself.").

This Court similarly finds that the claims against HCPD must be dismissed because HCPD does not exist as a separate legal entity from Henrico County and is not capable of being sued.

Even if Plaintiffs attempted to bring suit against Henrico County, instead of HCPD, such attempt would be futile under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).[10] In *Monell*, the Supreme Court held that vicarious liability, under a theory of respondeat superior, is not available for claims brought under § 1983. 436 U.S. at 691. Because it appears that Plaintiffs are only bringing suit against HCPD due to alleged actions of its officers—that is, a vicarious liability claim—any suit against Henrico County for such alleged actions would be foreclosed under *Monell*. *See id.* at 691, 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.").

---

[10] Based on the limited factual allegations in the Complaint, it appears that Plaintiffs are seeking to hold Defendant HCPD liable under § 1983, rather than §§ 1985 and 1986. However, if Plaintiffs are attempting to hold Defendant HCPD liable under §§ 1985 and 1986, those claims must also be dismissed for reasons discussed *infra*.

7

Therefore, the claims against Defendant HCPD will be dismissed.

## B. The Claims Against Defendant HCPS Board Fail Under *Monell*

Plaintiffs have failed to sufficiently allege facts in their Complaint that Defendant HCPS Board implemented and executed an unlawful policy or custom that was responsible for Plaintiffs' alleged deprivation of constitutional rights.

In *Monell*, the Supreme Court held that municipalities and local government units, like school boards, can be sued directly under § 1983, where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. That is, "[u]nder *Monell*, a municipality's liability arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom. Thus, [plaintiffs are] obliged to identify a municipal policy or custom that caused their injury." *Walker v. Prince George's Cty.*, 575 F.3d 426, 431 (4th Cir. 2009) (internal citations and quotations omitted). Furthermore, the plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

In this case, it appears that Plaintiffs have made only a single allegation against Defendant HCPS Board in Count II. (Compl. ¶ 107 ("Plaintiffs allege that Police Chief Cardounel and Sergeant Crooks failed to prevent defendant HCPS from obtaining an unenforceable and unlawful summons knowing that no violation had occurred in violation of the parties [sic] Fourth and Fourteenth Amendment rights under the United States Constitution.").) Viewing the Complaint in the light most favorable to Plaintiffs,

Plaintiffs have failed to identify a School Board policy, custom, or practice that caused their injuries. *See Walker*, 575 F.3d at 431. As such, Plaintiffs have failed to plead a viable claim under *Monell* against Defendant HCPS Board.

Notably, it seems that Plaintiffs have named Defendant HCPS Board as a defendant in their Complaint in order to hold the School Board liable for the alleged misconduct of Defendants Kinlaw and Eggleston.[11] However, as the Court previously addressed above, vicarious liability is not available for § 1983 claims. *See Monell*, 436 U.S. at 691.

As such, the claims against Defendant HCPS Board will be dismissed.

## C. Plaintiffs Fail to State a § 1983 Claim

Plaintiffs have failed to state a claim against Defendants for civil conspiracy under § 1983. Notably, it is unclear from Plaintiff's Complaint—which governs this Court's analysis—which counts are alleged violations of § 1983, and which ones are instead alleged violations of § 1985. However, because Plaintiffs have named both §§ 1983 and 1985 in Count II, the Court will address both statutes.

To state a claim for conspiracy under § 1983, a plaintiff "must present evidence that [(1)] the [defendants] acted jointly in concert and [(2)] that some overt act was done [(3)] in furtherance of the conspiracy [(4)] which resulted in [plaintiffs'] deprivation of a constitutional right . . . ." *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir. 1996)

---

[11] Based on the limited factual allegations in the Complaint, it appears that Plaintiffs are seeking to hold Defendant HCPS Board liable under § 1983, rather than § 1985 and § 1986. However, if Plaintiffs are attempting to hold Defendant HCPS Board liable under §§ 1985 and 1986, those claims must also be dismissed for reasons discussed *infra*.

9

(citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). "While [plaintiffs] need not produce direct evidence of a meeting of the minds, [they] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* Plaintiffs' evidence must "reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*; *see also Ruttenberg v. Jones*, 283 F. App'x 121, 132 (4th Cir. 2007) (unpublished) ("[Plaintiffs] were required to allege 'enough facts to state a claim to relief that is plausible on its face' . . . . [which] requires a 'plausible suggestion of conspiracy.'" (quoting *Twombly*, 550 U.S. at 566, 570)); *Brown v. Angelone*, 938 F. Supp. 340, 346 (E.D. Va. 1996) ("The plaintiff must allege facts which show that the defendants shared a 'unity of purpose or common design' to injure the plaintiff. . . . The mere fact that each of [the] actors played a part in the events is not sufficient to show such a unity of purpose." (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946))). Plaintiffs "have a weighty burden to establish a civil rights conspiracy." *Hinkle*, 81 F.3d at 421; *see also Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) ("[C]ourts have [] required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." (quoting *Gooden v. Howard Cty.*, 954 F.2d 960, 969–70 (4th Cir. 1992) (alterations in original))).

Most evidently, Plaintiffs have failed to sufficiently allege facts of any deprivation of a constitutional right. Plaintiffs allege that Defendants Kinlaw, Eggleston, Cardounel, and Crook conspired amongst themselves (and with Defendants Taylor, Kregar, and

Steverson) to unlawfully serve, prosecute, and convict Plaintiffs of trespassing on school

grounds under Va. Code Ann. § 18.2-128, in violation of Plaintiffs' First, Fourth, Fifth,

Sixth, and Fourteenth Amendments.[12] However, Plaintiffs have failed to show that

Defendants deprived Plaintiffs of any of these constitutionally protected rights, and thus,

have failed to make out a claim for conspiracy under § 1983.[13]

---

[12] Plaintiffs also allege that their Eighth Amendment rights were violated. However, it appears that only Judge Steverson is alleged to have violated this right. Because the Fourth Circuit dismissed the federal civil rights claims as to Judge Steverson, the Court need not address the alleged Eighth Amendment violation.

[13] The Court recognizes that claims against individuals in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, when a § 1983 suit alleges claims against both the officer in his official capacity and the entity, courts in this Circuit have dismissed the official capacity claim. *See, e.g., Conley v. Town of Elkton*, 5:04CV00030, 2005 WL 415897, at *7 (W.D. Va. Feb. 22, 2005) (citing *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004)). It is unclear from the face of the Complaint whether Plaintiffs are suing these officials in their official or individual capacity. To the extent that they are sued in their official capacity, and to the extent the claims against them duplicate the claims against HCPD and HCPS Board, the § 1983 claims against the officers in their official capacities will be dismissed because the entities received notice and were given the opportunity to respond. *See Love-Lane*, 355 F.3d at 783 ("The district court correctly held that the § 1983 claim against [the defendant] in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."). To the extent the claims are not duplicative, § 1983 suits against officers in their official capacities are governed by *Monell*. *See Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982) ("Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent . . . . [Therefore, since] the injury occurring in this case did not arise from the execution of governmental policy or custom, the defendants cannot be liable in their official capacities." (citations omitted)). Just as Plaintiffs have failed to allege any facts of a policy or custom that governed the actions of the entities in this case, as explained above, Plaintiffs have similarly failed to allege any policy or custom that governed the actions of the officials. Furthermore, to the extent the individuals are being sued in their individual capacity, the qualified immunity analysis also disposes of those claims. *See Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) ("[Q]ualified immunity is available only in a personal capacity suit. . . ." (citation omitted)). Finally, as it is unclear whether the individuals here are being sued in their official or individual capacity, the failure to state a claim analyses apply to either type of suit. *See, e.g., Greene v. Obama*, 633 F. App'x 196 (4th Cir. 2016) (unpublished).

Plaintiffs first contend that "Superintendent Kinlaw and Principal Eggleston did maliciously conspire to seek an unlawful and otherwise unenforceable summons against the parties for trespass in violation of the parties' rights and protections under the First and Fourth Amendment of the United States Constitution. . . ." (Compl. ¶ 104.) In regard to the First Amendment violation, Plaintiffs allege that "[t]he attempt to re-enroll M.A. in his school of origin was a protected activity and it included the First Amendment rights of [Plaintiffs] . . . ." (*Id.* ¶ 62.) Plaintiffs presumably allege that their First Amendment rights were violated when they were served with summonses in response to their "sit in" and "protected activities" of "free speech and right to peaceably assemble." (*Id.* ¶¶ 66, 70.)

However, the Fourth Circuit has found that "[s]chool officials . . . have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property . . . . [and], such officials should never be intimidated into compromising the safety of those who utilize school property." *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999); *see also Carey v. Brown*, 447 U.S. 455, 470–71 (1980) ("[N]o mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the from the kind of boisterous and threatening conduct that disturbs the tranquility of spots selected by the people . . . [such as] public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals." (citation omitted)). "The right to communicate is not limitless." *See Lovern*, 190 F.3d at 656.

12

In *Lovern*, the non-custodial parent of three students of Henrico County public schools brought suit against the Superintendent, alleging that the Superintendent violated § 1983 and the plaintiff's First and Fourteenth Amendment rights after the school administration sought to bar the plaintiff from entering school property. *Id.* at 650, 653, 656. The Superintendent's decision to prohibit plaintiff's entry onto school property was due to plaintiff's "continued pattern of verbal abuse and threatening behavior towards school officials." *Id.* at 655. The Fourth Circuit agreed with the district court that it lacked subject matter jurisdiction because the plaintiff failed to assert a substantial federal claim as it was unable to find that his constitutional rights were implicated. *Id.* at 656.

The facts of this case are substantially similar to the facts in *Lovern*, except that notably only Plaintiff Hunter-Davis is a parent of the student whose rights Plaintiffs were allegedly seeking to protect. As Plaintiffs plead in their Complaint, "Eggleston went to the magistrate to swear out the summons for trespass, citing the 'staged lockdown' to justify the perception of the parties as 'disruptions' and threats to the students and the staff." (Compl. ¶ 74.) Furthermore, Plaintiffs allege that even after the police arrived previously to ask the Plaintiffs to leave the school, Plaintiffs returned the next day and "publicly announced through a Facebook communique that the parties would be engaged in a 'sit in'" until the child was re-enrolled in the school. (*Id.* ¶¶ 58–70.) Plaintiffs contend that "Eggleston once again demanded that they leave" and that he later "went to the magistrate to swear out the summons for trespass." (*Id.* ¶¶ 66, 74.)

Considering the facts as Plaintiffs allege them, Plaintiffs have failed to establish that their First Amendment rights were implicated by Defendants Kinlaw's and

13

Eggleston's alleged actions in seeking Plaintiffs' removal from the school's property, as they have the duty and responsibility to maintain the safety and decorum of the school and may seek to prevent threats to the school and its students. *See Lovern*, 189 F.3d at 655–56. Therefore, Plaintiffs have failed to state a plausible claim for a violation of their First Amendment rights.

Plaintiffs next contend that Defendants (in various conspiracies) violated Plaintiffs' Fourth Amendments rights by allegedly seeking and serving Plaintiffs with unlawful and unenforceable summonses. The Fourth Amendment provides in pertinent part that "[t]he right of the people to be secure in their persons [and] houses . . . against unreasonable searches and seizures shall not be violated . . . ." U.S. CONST. amend. IV. Plaintiffs' Complaint, liberally construed, does not provide any factual allegations of an unlawful search. As such, the Court construes Plaintiffs' Complaint to allege an unlawful seizure under the Fourth Amendment.

However, Plaintiffs continually allege throughout the Complaint that they were only served with summonses for trespass, and that they were never in fact arrested. (*See* Compl. ¶ 108 ("Plaintiffs allege that HCPD officers serv[ed] unlawful summonses where no violation or arrests had occurred . . . .").) "A summons requiring no more than a court appearance, without additional restrictions, does not constitute a Fourth Amendment seizure." *Ryu v. Whitten*, 684 F. App'x 308, 311 (4th Cir. 2017) (unpublished) (collecting cases) (finding that the defendant had not violated the plaintiff's Fourth Amendment rights by obtaining and issuing a summons, even if the defendant had been

negligent in obtaining the summons as to that plaintiff).[14]  Thus, the mere fact that

Plaintiffs were served with summons for trespass does not constitute an unreasonable

seizure under the Fourth Amendment.

The Complaint does allege that "five HCPD officers arrived to [Plaintiff Lucas's]

home to serve her with the summons." (Compl. ¶ 79.)  The Court recognizes that the

home is the quintessential constitutionally protected area under the Fourth Amendment.

*See Kentucky v. King*, 563 U.S. 452, 459 (2011) ("It is a basic principle of Fourth

Amendment law . . . that searches and seizures inside a home without a warrant are

presumptively unreasonable." (citations and quotations omitted)).  "Except in such

special situations [as consent or exigent circumstances], we have consistently held that

the entry into a home to conduct a search or make an arrest is unreasonable under the

Fourth Amendment unless done pursuant to a warrant." *Guerrero v. Moore*, 442 F.

App'x 57, 58 (4th Cir. 2011) (unpublished) (quoting *Steagald v. United States*, 451 U.S.

204, 211 (1981) (alterations in original)).

In *Guerrero*, the Fourth Circuit found that an officer was not shielded by qualified

immunity when he *entered* the plaintiff's home in an attempt to serve her with a

---

[14] Thus, even though Plaintiffs continually allege that the summonses were obtained
"unlawfully" and were "otherwise unenforceable," Plaintiffs have failed to show that their
Fourth Amendment rights were violated. *See Ryu*, 684 F. App'x at 311 (concluding that the
officer did not violate the plaintiff's Fourth Amendment right by obtaining a summons, despite
the fact that the summons "might have been voidable"); *see also Glass v. Anne Arundel Cty,*, 716
F. App'x 179, 180 n.1 (4th Cir. 2018) (unpublished) ("To the extent that [plaintiff] claims that
[the officer] lacked probable cause to issue a citation, [the officer] issued only a summons, and a
summons alone is insufficient to support a Fourth Amendment seizure claim." (collecting
cases)).  However, Plaintiffs' allegations that the summonses were unlawful are conclusory, with
insufficient factual assertions to support them, which the Court need not accept.

15

misdemeanor summons, in violation of the Fourth Amendment. *Id.* ("[The officer] fails

to persuade us . . . that the summons was the functional equivalent of an arrest warrant for

Fourth Amendment purposes. . . . [The officer] fails to cite any persuasive Fourth

Amendment precedent that permits a government official *to enter* a dwelling to serve a

non-custodial misdemeanor summons." (emphasis added)). However, unlike in that case,

this Complaint alleges only that the officers "arrived to," rather than "entered," Plaintiff

Lucas's home. (*See* Compl. ¶ 79.) Furthermore, Plaintiffs do not allege any further facts

that the officers acted unreasonably, and in violation of the Fourth Amendment, when

they served the summons on Plaintiff Lucas. That is, there are no facts alleged that

Plaintiff Lucas was unreasonably seized, or her home unreasonably searched, which

would support a plausible claim for a Fourth Amendment violation.

Consequently, Plaintiffs have failed to state a claim for an alleged Fourth

Amendment violation.

Plaintiffs next contend that Defendant Kinlaw

> did conspire with [Taylor] on January 30, 2018 before the summonses for
> trespass were sworn to "address" the parties return on January 31, 2018.
> Plaintiffs further allege that after 2 of the parties were served on January 31,
> 2018, Kinlaw did again conspire with [Taylor] to prosecute the trespass case
> against the parties based on an unlawfully obtained summons, and that
> [Taylor] did maliciously prosecute the matter in the interest of Kinlaw and
> HCPS, rather than in the interest of the public, justice, and the State.

(Compl. ¶ 109.) Plaintiffs allege that this was done in violation of the Fourth, Fifth,

Sixth, and Fourteenth Amendments.[15] The Court has already found that Plaintiffs have

---

[15] The remainder of this paragraph in the Complaint contains allegations against Defendant
Taylor alone, and then concludes by alleging these various violations of the Constitution. Thus,
it is not clear if Plaintiffs are claiming that this alleged conspiracy between Defendants Kinlaw

failed to state a claim for a violation of their Fourth Amendment rights. Furthermore, Plaintiffs do not allege any facts as to how, and under which provisions, their Fifth and Sixth Amendment rights were violated by Defendants. Even construing the Complaint liberally, the Court cannot—nor is it required to—discern how Defendants deprived Plaintiffs of these constitutionally protected rights without any factual support alleged. *See Laber*, 438 F.3d at 413 n.3.

Finally, Plaintiffs repeatedly allege throughout Count II that Defendants' actions violated their constitutional rights under the Fourteenth Amendment.[16] The Court first surmises that Plaintiffs have included the Fourteenth Amendment in the majority of their allegations because the Fourteenth Amendment makes applicable to the States the provisions of the Bill of Rights that Plaintiffs allege Defendants have violated. *See Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) ("When ratified in 1791, the Bill of Rights applied only to the Federal Government. . . . With only 'a handful' of exceptions, this Court has held that the Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the States." (citing *McDonald v. City of Chicago*, 561 U.S. 742, 764–65 & nn. 12–13 (2010)). The

---

and Taylor violated these constitutional rights. However, the Court will liberally construe the Complaint to include such alleged violations for the conspiracy claim.

[16] In this Court's previous Memorandum Opinion in this case, the Court dismissed Plaintiffs' equal protection claim for lack of standing to the extent that that claim was brought as an alleged violation of M.A.'s constitutional rights, which was affirmed by the Court of Appeals. Thus, the Court need not address the parts of Count II of the Complaint that allege violations of M.A.'s equal protection rights.

17

Fourteenth Amendment, however, does not save Plaintiffs from failing to state a claim for any of the alleged violations under the Bill of Rights.

To the extent Plaintiffs allege independent violations of the Fourteenth Amendment, these allegations also fail to state a claim. Like the claims alleging violations of the Fifth and Sixth Amendments, the Complaint fails to state how, and under which provisions, Defendants violated Plaintiffs' Fourteenth Amendment rights. *(See, e.g.*, Compl. ¶ 105.) Plaintiffs are presumably alleging violations under the Due Process Clause of the Fourteenth Amendment, as they reiterate that Defendants engaged in a conspiracy to obtain an "unlawful and unenforceable summons for trespass" against Plaintiffs. *(See, e.g., id.* ¶¶ 105, 109.)

The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. While the Due Process Clause offers a breadth of protections, it is not the proper way "to evaluate law enforcement's pretrial missteps. Compared to the more generalized notion of due process, the Fourth Amendment provides an explicit textual source of constitutional protection against unreasonable seizures and arrests and defines the process that is due for seizures of persons or property in criminal cases." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citations and internal quotations omitted); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 ("[I]f a constitutional claim is covered by a specific constitutional provision . . ., the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7

18

(1997))). Thus, the Fourteenth Amendment's Due Process Clause is not the proper vehicle for Plaintiffs' claims; instead, the Fourth Amendment would be the only available actionable ground for relief, but as discussed previously, Plaintiffs fail to sufficiently allege a viable Fourth Amendment violation.[17]

Even if the Court were to read the Complaint as alleging a violation of Plaintiffs' equal protection rights under the Fourteenth Amendment, Plaintiffs have yet again failed to allege a sufficient claim. The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc., v. Dep't. of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Plaintiffs have failed to allege any facts that they were not treated just as any other member of society would have been treated after threatening a "sit in" on school property on a social media website, demanding that they had rights to remain on and return to that property, and commanding that they would return everyday if necessary.

---

[17] Even if the Plaintiffs' claims were not covered by the Fourth Amendment, and instead a substantive due process analysis were more appropriate, Plaintiffs have not provided a sufficient factual basis to show that Defendants' actions "shocked the conscience." *Lewis*, 523 U.S. at 847 ("[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." (internal citations and quotations omitted)).

19

(Compl. ¶¶ 66, 70.) As such, Plaintiffs have failed to sufficiently allege a violation of the Equal Protection Clause of the Fourteenth Amendment.

Accordingly, Plaintiffs have failed to state a plausible claim under the Fourteenth Amendment.

Thus, by failing to allege sufficient facts of any deprivation of their constitutional rights, Plaintiffs have failed to state a claim for civil conspiracy under § 1983.[18] *See Hinkle*, 81 F.3d at 421; *see also Richardson v. Grievance Coordinator*, No. 7:14cv470, 2014 WL 5147916, at \*3 (W.D. Va. Oct. 14, 2014) (dismissing the plaintiff's civil conspiracy claim because he "failed to demonstrate that actions of any of the defendants

---

[18] To the extent the Complaint also alleges any non-conspiratorial constitutional deprivation under § 1983, *see, e.g.*, Compl. ¶¶ 107–08, those claims will be similarly dismissed for failure to state a claim because plaintiffs have failed to sufficiently allege any constitutional injury. *Albright v. Oliver*, 510 U.S. 266, 269 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed." (internal citations and quotations omitted)); *see also Harris v. Frazier*, No. 3:07-cv-701, 2009 WL 890161, at \*12 (E.D. Va. Mar. 30, 2009) ("[S]upervisory liability under § 1983 cannot exist without an underlying constitutional violation . . . ."); *Lowe v. Hoffman*, No. 1:07cv363, 2008 WL 3895599, at \*5 (E.D. Va. Aug. 20, 2008) (concluding that defendants could not be held liable based on a theory of bystander liability because plaintiff's constitutional rights were not violated). Additionally, while the Complaint contains allegations that Defendant Crook committed perjury, the only allegation of perjury in Count II was that Defendants Taylor and Kregar conspired to procure Defendant Crook's perjury in violation of 18 U.S.C. § 1622, which provides that "[w]hoever procures another to commit any perjury is guilty of subornation of perjury." (*See* Compl. ¶¶ 85, 110.) Thus, Count II does not contain a perjury allegation against Defendant Crook, or any of the remaining Defendants. However, to the extent the Complaint can be viewed as attempting to hold Defendant Crook liable under federal civil rights law for his alleged perjury, Plaintiffs fail to assert how this alleged perjury violated their constitutional rights or formed the basis for any federal civil rights claim. *See Foster v. Fisher*, 1:14-cv-292, 2016 WL 900654, at \*11 (W.D.N.C. Mar. 9, 2016) ("While Plaintiff makes clear that [Defendant's] alleged perjury is of the utmost importance to her, Plaintiff fails to make any argument as to how the alleged perjury of a (state actor) witness in a state court proceeding forms any basis for a federal civil rights claim."), *aff'd*, 694 F. App'x 887, 888 (4th Cir. 2017) (unpublished) ("We agree with the district court that [the plaintiff] has failed to articulate how the alleged perjury amounts to a viable civil rights claim under 42 U.S.C. § 1983 (2012).").

20

violated his constitutional rights, as is required to establish a civil conspiracy); *Bell v. Johnson*, No. 7:09-cv-214, 2011 WL 1226003, at *10 (W.D. Va. Mar. 30, 2011) ("[Plaintiff's] conspiracy claim . . . is foiled at the outset . . . since he has failed to establish an underlying constitutional deprivation.").

While the Court need not address the additional elements of a § 1983 civil conspiracy claim, Plaintiffs have failed to allege sufficient facts establishing these remaining elements. *See Hinkle*, 81 F.3d at 421. Specifically, Plaintiffs have failed to show that Defendants "shared the same conspiratorial objective" or that they "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."[19] *See id.* Instead, the facts Plaintiffs do allege show that the school administrators legitimately reached out to law enforcement officers, and sought summonses, to rightfully protect their school and students against disruptive behavior on school property. *See Lovern*, 190 F.3d at 655–56.

As such, Plaintiffs have failed to plausibly allege a claim for civil conspiracy under § 1983. Accordingly, those claims will be dismissed.

---

[19] Plaintiffs continually rely on language from an email that they attached as an exhibit to their Complaint. Specifically, Plaintiffs allege that Defendant Cardounel "did conspire with Superintendent Kinlaw and Principal Eggleston to advise them on how they could provide the police with the 'direction/authority' to 'address' the parties as trespassers in violation of their Fourth and Fourteenth Amendment protections . . . ." (Compl. ¶ 106 (quoting Ex. 6).) However, on its face, this allegation fails to satisfy Plaintiffs' weighty burden to establish an unlawful agreement between the parties. *See Hinkle*, 81 F.3d at 421. Furthermore, the actual email exhibit shows that the email was written after the summonses were issued, and thus fails to show how Defendants conspired against Plaintiffs in seeking the summonses. Because Plaintiffs continually incorporate the "direction/authority" language from the exhibit in their Complaint and assert it as part of their factual basis of an alleged conspiracy, the Court finds that Plaintiffs have relied on the exhibit for its truthfulness; given the conflict between the exhibit and the allegations in the Complaint, the exhibit prevails. *See Goines*, 822 F.3d at 165–69.

21

## D. Plaintiffs Fail to State a Claim for Conspiracy Under §§ 1985 and 1986

Plaintiffs further allege in Count II that Defendants' actions violated § 1985. Plaintiffs do not identify which subsection of § 1985 was allegedly violated. However, in the Complaint's Statement of Facts, Plaintiffs have included language from § 1985(2). (*See* Compl. ¶ 32 ("if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws").)

While Plaintiffs have included verbatim the language from § 1985(2), that subsection proscribes conspiracies that interfere with the administration of justice in the court system. Notably, the language quoted by Plaintiffs comes from the "second part of § 1985(2)" which "applies to conspiracies to obstruct the course of justice in state courts." *Kush v. Rutledge*, 460 U.S. 719, 722 n.3, 725 (1983); *see also Roper v. Cty. of Chesterfield*, 807 F. Supp. 1221, 1226 (E.D. Va. 1992) ("Virtually all courts have held that the second clause of Section 1985(2) applies to . . . joint efforts to prevent equal access to state judicial proceedings." (citations omitted)). "[This portion] of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush*, 460 U.S. at 725; *see also Bloch v. Mountain Mission Sch.*, No. 86-1279, 1988 WL 45433, at *1 (4th Cir. May 2, 1988) (unpublished) ("[A] racial or class-based animus is necessary for a violation of . . . the second half of § 1985(2) . . . ."). However, it is unclear from the allegations in the

Complaint: 1) how Defendants conspired "to obstruct the course of justice in state courts," that is, how Defendants acted in concert to prevent Plaintiffs' equal access to Virginia state court proceedings, and 2) that Defendants acted with the intent to deprive Plaintiffs "of the equal protection of the laws." *See Kush*, 460 U.S. at 725. Thus, Plaintiffs have failed to state a claim under § 1985(2).

Despite Plaintiffs having included language from § 1985(2) in their Statement of Facts, Defendants have repeatedly contended that Plaintiffs have presumably brought suit under § 1985(3). Plaintiffs have not argued to the contrary, despite numerous opportunities to do so. Construing Plaintiffs' Complaint liberally as the Court must, the Court also finds that Plaintiffs have failed to state a claim under § 1985(3).

Section 1985(3) proscribes:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

*Simmons*, 47 F.3d at 1376 (quoting § 1985(3)).

To state a claim for conspiracy under § 1985(3), Plaintiffs must prove the following elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

23

*Id.* Plaintiffs "must show an agreement or a 'meeting of the minds' by defendants to violate [Plaintiffs'] constitutional rights." *Id.* at 1377 (citations omitted). Plaintiffs must satisfy a "relatively stringent standard" in order to establish a viable § 1985 conspiracy claim. *Id.* "[T]he racial or class-based invidiously discriminatory animus requires concrete supporting facts and cannot be inferred." *Patterson v. McCormick*, No. 2:13cv293, 2014 WL 2039966, at *7 (E.D. Va. May 15, 2014) (citing *Gooden*, 954 F.2d at 970).

Thus, in order to establish a § 1985(3) conspiracy claim, Plaintiffs must again show that Defendants unlawfully conspired to deprive Plaintiffs of their constitutional rights. *See* Simmons, 47 F.3d at 1377 ("Under this relatively stringent standard for establishing section 1985 conspiracies, it is clear that [the plaintiff] did not put forth sufficient evidence that [the defendants] 'conspired' or participated in any joint plan, to deprive him of his constitutional rights under section 1985(3)."). Accordingly, for the same reasons the conspiracy claims under § 1983 must be dismissed under Rule 12(b)(6)—that is, because Plaintiffs have failed to allege sufficient facts of any constitutional injury or that Defendants mutually agreed to participate in an unlawful plan—and because Plaintiffs have failed to allege that Defendants were "motivated by a specific class-based, invidiously discriminatory animus," Plaintiffs have failed to state a claim for a § 1985(3) conspiracy.[20] *See id.* at 1376; *see also Patterson*, 2014 WL

---

[20] In *Gooden*, the Fourth Circuit found that the plaintiff's "§ 1985(3) claim was essentially an afterthought with little more to support it than the respective racial identities of the individuals involved," and that the mere assertion that the officers in question were of a different race than the plaintiff was not enough "to overcome the fact that the officers acted upon the basis of a citizen's complaint, confirmed repeatedly by their own observations . . . ." 954 F.2d at 970.

24

2039966, at *8 ("[T]he Plaintiff fails to show any 'meeting of the minds' by the Defendants to deprive him of any civil rights."). Accordingly, those claims will similarly be dismissed.[21]

Because "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985," Plaintiffs' § 1986 claim will also be dismissed. *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985).

## E. Defendants Kinlaw and Eggleston are Protected by Qualified Immunity

As government officials, Defendants Kinlaw and Eggleston are protected from suit by qualified immunity. As such, Count II will additionally be dismissed against these defendants on qualified immunity grounds, to the extent Plaintiffs seek damages against these Defendants in their personal capacities. [22]

---

Similarly, in this case, the mere fact that Plaintiffs and M.A. are African American and that the school is "predominantly Asian and White," and that Defendants Kinlaw and Eggleston are Caucasian and Defendant Cardounel is Latino (as alleged in the Complaint), does not show the unlawful intent necessary to establish a § 1985(3) claim. (Compl. ¶¶ 7–26.)

[21] In *Hinkle*, upon finding that the district court properly dismissed the civil conspiracy claim under § 1983, in a footnote, the Fourth Circuit dismissed the conspiracy claims under § 1985 for the same reasons, as the claimants used the same evidence to support both conspiracy claims. 81 F.3d at 423 n.4. This Court applies the same reasoning, as Plaintiffs have failed to offer differing evidence for their conspiracy claims; indeed, they allege the same counts for the § 1983 claim as they do for the § 1985 claim, and fail to distinguish them in their Complaint.

[22] The Court recognizes that qualified immunity only applies to suits that seek damages, and not equitable relief, against government officials. *See Wall v. Wade*, 741 F.3d 492, 498 n.9 (4th Cir. 2014) ("The plaintiff's claims for equitable relief are not affected by the doctrine of qualified immunity, which 'has no application to suits for declaratory or injunctive relief.'" (quoting *S.C. State Bd. of Dentistry v. F.T.C.*, 455 F.3d 436, 446–47 (4th Cir. 2006))). It is clear from the face of the Complaint that Plaintiffs seek damages from Defendants Kinlaw and Eggleston. (Compl. 40.) However, it is unclear the extent to which the Plaintiffs seek declaratory and injunctive relief from these two Defendants. Thus, for the sake of thoroughness, the Court also dismisses Plaintiffs' claims against these two Defendants under Rule 12(b)(6).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Goines*, 822 F.3d at 163. Qualified immunity "is an immunity from suit rather than a mere defense to liability . . . [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). Thus, issues of immunity should be resolved "at the earliest possible stage of litigation." *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

To determine whether an officer is protected by qualified immunity, the Court must decide: 1) whether the alleged facts "make out a violation of a constitutional right," and 2) whether that right was "clearly established" at the time of the officer's alleged misconduct. *Id.*; *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (defining the "qualified immunity test" as "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right of which a reasonable person would have known" (internal citations and quotations omitted)). The Supreme Court no longer mandates a particular sequence in how these two elements should be addressed. *Pearson*, 555 U.S. at 236. If both aspects of the test are met, then the government official is not entitled to a qualified immunity defense. *See Ridpath*, 447 F.3d 292 at 306.

In this case, the Court need not address the second-prong of the qualified immunity test, as Plaintiffs' have failed to sufficiently allege violations of any constitutionally protected right, for the reasons stated in Section III.C of this Memorandum Opinion. *See Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (citation omitted) ("To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation."). As such, for the same reasons the Complaint must be dismissed because the Plaintiffs have failed to sufficiently allege a violation of a constitutional right, *see Sheppard v. Visitors of Va. State Univ.*, No. 3:18-cv-723-HEH, 2019 WL 1869856, at \*6 (E.D. Va. Apr. 25, 2019), Defendants Eggleston and Kinlaw are protected by qualified immunity, and Plaintiffs are barred from pursuing their damages claims against them in their individual capacities. [23]

## F. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Claims

This Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining Counts IV–VI. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [where] the district court has dismissed all claims over which it has original jurisdiction . . . ."). Because this Court has dismissed all of Plaintiffs' claims over which it has original jurisdiction, for the reasons

---

[23] It appears that Plaintiffs do not seek damages from Defendants Cardounel and Crook. Because qualified immunity only applies in damages suits, the Court does not apply this doctrine to these defendants. However, if Plaintiffs did attempt to later bring a damages suit against these defendants, or to the extent the Complaint could be read as seeking damages against these defendants, they would also be protected by qualified immunity.

discussed *supra*, the Court need not resolve Plaintiffs' remaining Counts IV–VI, which arise under the laws and constitution of the Commonwealth of Virginia. Accordingly, these state law claims will also be dismissed.[24]

## IV.   CONCLUSION

For all these reasons, the remaining claims in Plaintiffs' Complaint will be dismissed in their entirety. Accordingly, Plaintiff Crawford's Motion to Sever Plaintiff (ECF No. 72) will be denied as moot. Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, the Court need not address Defendants Taylor's, Kregar's, and Steverson's Renewed Motions to Dismiss (ECF Nos. 63, 66), and they will also be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: **Nov. 6, 2019**
Richmond, VA

---

[24] While the Fourth Circuit did vacate this Court's previous judgment declining to exercise supplemental jurisdiction over these state law claims, it did so because it also vacated the dismissal of the remaining federal civil rights claims against Defendants. Having now dismissed these federal claims on alternative grounds, this Court may again decline to exercise supplemental jurisdiction over the state law claims as to all Defendants, including Defendants Kregar, Taylor, and Steverson.